UNITED STATES, Appellee,

v.

Rodrigo SOSTRE, Defendant, Appellant.

No. 91–1918.

United States Court of Appeals,
First Circuit.

Heard May 5, 1992.

Decided June 29, 1992.

Robert B. Mann with whom Mann & Mitchell, Providence, R.I., was on brief for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Kenneth P. Madden, Asst. U.S. Atty., Providence, R.I., were on brief for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

Appellant Rodrigo Sostre pled guilty to two counts of an indictment charging him and others with forming part of a conspiracy to possess with intent to distribute in excess of 500 grams of cocaine, and with the substantive offense of possession with intent to distribute, all in violation of 21 U.S.C. §§ 841(a) and (b) and § 846, and 18 U.S.C. § 2. On September 6, 1991, the district court sentenced appellant to a one-hundred-month term of imprisonment, a five-year term of supervised release, and a $100 special assessment.

On appeal, Sostre raises three issues with respect to the district court's sentence. He first challenges the court's three-level upward adjustment based on the finding that appellant was a supervisor in the criminal activity. Second, appellant argues that the sentencing court erred in not granting defendant a two-level reduction based on his minor participation in the criminal venture. Finally, he challenges the two-level increase for the possession of a weapon during the drug transaction.

As to the district court's rulings granting a two-level increase for the possession of a weapon during a drug transaction and denying a two-level decrease for being a minor participant, we affirm. With respect to the district court's three-level upward adjustment for appellant's supervisory role, we reverse and remand for resentencing.

## I.

### Background

On February 15, 1991, an informant working with the Drug Enforcement Administration ("DEA") contacted appellant and sought his help in arranging the purchase of one or two kilograms of cocaine. In a series of recorded conversations, Sostre told the informant that his source would only provide one kilogram of cocaine. He also mentioned that he was going to meet with his source in the next few minutes. DEA surveillance revealed that appellant met with codefendant Luis Santiago–Martínez, who turned out to be the source.

On February 19, 1991, appellant contacted the informant and told him that his source, Santiago–Martínez, was ready to sell one kilogram of cocaine for $28,000. Santiago–Martínez wanted to conduct the transaction at Sostre's house. At approximately 2:00 P.M. on February 19, 1991, the informant and DEA Special Agent Anthony Roberto arrived at Sostre's house, located at 201 Manton Avenue, in Providence, Rhode Island. Also present was appellant's brother, Jorge Luis Sostre. While awaiting Santiago–Meléndez' arrival, the

* Of the District of Puerto Rico, sitting by designation.

four men conversed about the quality of the cocaine and the fact that it was better to conduct this type of transaction inside Sostre's home in Providence and not in Central Falls, where there was a heavy concentration of Rhode Island state police. During the meeting, appellant left the first floor porch to telephone the source, inquiring when the latter would arrive with the cocaine. Appellant's brother remained on the porch at all times, acting as a lookout. After Sostre's telephone call, despite assurances that the source and the cocaine were en route, Agent Roberto and the informant advised the Sostre brothers that they would await the arrival of the cocaine at another location and could be reached by calling the informant's pager.

Meanwhile, DEA surveillance at the home of Santiago–Martínez revealed that he was picked up by codefendants José Sánchez and José Hernández. They arrived at Sostre's house at 2:54 P.M. and the informant was then paged, signalling that the cocaine had arrived. The DEA agent and the informant returned to appellant's house. Jorge Luis Sostre remained on the porch while appellant met the two men and took them up to the second floor apartment. Upon entering the apartment, the buyers encountered Santiago–Martínez, Sánchez, and Hernández awaiting them, and saw a kilogram of cocaine placed on the table. When Special Agent Roberto asked "Why do you need three people?" Sánchez replied, "Because that is the way I do business." Agent Roberto inspected the cocaine and, after commenting that it looked good, informed the sellers that he would return to his car to get the $28,000.

Thereafter, Roberto gave an arrest signal and DEA agents entered the premises. Jorge Luis Sostre was arrested walking away from the house and the other four codefendants were arrested inside the apartment. At the time of arrest, codefendant Hernández had tucked in his belt a fully-loaded and operable Browning semi-automatic pistol. A subsequent laboratory analysis by a DEA chemist revealed that the cocaine seized in Sostre's apartment weighed 1,001 grams and tested 94% pure. The pistol was test-fired and found to be operable.

On March 14, 1991, appellant and his four codefendants were indicted. Appellant was charged in counts one and two of the five-count indictment.[1] On June 24, 1991, appellant pled guilty to both charges. In a non-binding plea agreement, the government agreed: (1) to recommend a sentence of five years of imprisonment or one at the low end of the guideline range, whichever proved to be greater; (2) that the appropriate base offense level was 26; and (3) not to argue that appellant was an organizer, leader, manager or supervisor within the meaning of U.S.S.G. § 3B1.1.

After Sostre's guilty plea was entered, the four codefendants went to trial and were convicted by a jury on July 19, 1991. Appellant's sentencing was set for September 6, 1991.

At the time of sentencing, appellant's guideline range was calculated as follows. Based on the one kilogram of cocaine, Sostre's base offense level was found to be 26. U.S.S.G. § 2D1.1(c). A two-level upward adjustment was then added based upon codefendant Hernández' possession of a dangerous weapon during the commission of the offense. U.S.S.G. § 2D1.1(b)(1) and § 1B1.3. He was also assigned a three-level increase under U.S.S.G. § 3B1.1(b) for his role as a manager or supervisor in a criminal activity involving five or more participants. Sostre then received a two-level reduction for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, giving him an adjusted base offense level of 29. Based on a criminal history category of I, appellant's guideline imprisonment range was determined to be 87–108 months. Sostre objected to the weapon enhancement and to the supervisory role adjustment.[2]

---

1. Count one charged a conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846. Count two charged possession and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1).

2. Prior to sentencing, Sostre also objected to the probation officer's calculation of a criminal history category of II based upon a prior conviction. The probation officer concurred, and the challenged conviction was excluded.

On August 20, 1992, the prosecutor sent a letter to the probation officer advising that the government would not take a position that Sostre was "an organizer, manager and/or supervisor." It was further noted that the evidence produced at the trial of Sostre's codefendants demonstrated that Sánchez and Santiago–Martínez were the ones who exercised leadership roles in the criminal activity. Also, in the government's Memorandum of Sentencing Issues, Sostre's participation in the conspiracy was described as that of a "steerer".

Sostre's sentencing hearing was held on September 6, 1991. With respect to the possession of the weapon by codefendant Hernández, defense counsel sought to distinguish the facts in this case from those found in *United States v. Bianco*, 922 F.2d 910 (1st Cir.1991). As to the manager-supervisor adjustment, appellant's counsel first noted that, according to the government's theory of the various co-conspirators' roles in the criminal activity, appellant did not act as a manager or a supervisor, but rather was simply a "steerer", one who made the arrangements for the sale. The district judge then questioned counsel using appellant's own version of the facts in the PSI in which Sostre stated that he had "arranged" the transaction. After hearing from the government, the judge first ruled that, given the nature of the transaction, it was reasonably foreseeable for appellant to conclude that a codefendant might possess a firearm and should therefore be subject to the section 2D1.1 enhancement. The court also overruled Sostre's objection to the PSI and found that his participation in the drug transaction—arranging the sale, assuring the quality of the drugs, making repeated phone calls to facilitate the transaction, and escorting the purchasers upstairs—was extensive, and his conduct constituted that of a supervisor. The district judge stated that his findings were made on the basis of the evidence which he heard at the trial and on the basis of the defendant's own statement submitted in the presentence report. After allocution by appellant and his counsel, the government requested a sentence at the low end of the guideline range, but the court imposed the one-hundred-month sentence.

## II.

### *Discussion*

#### A. *Weapon Possession Adjustment*

■ In reviewing a district court's sentence enhancement under U.S.S.G. §§ 2D1.1(b)(1) and 1B1.3(a), this court will accord due deference to the court's application of the sentencing guidelines to the facts of the case. *United States v. Bianco*, 922 F.2d at 911; *United States v. Paulino*, 887 F.2d 358, 359 (1st Cir.1989). Factbound matters related to sentencing need only be supported by a preponderance of the evidence and will be set aside only for clear error. *United States v. Camuti*, 950 F.2d 72, 74 (1st Cir.1991); *United States v. David*, 940 F.2d 722, 739 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 605, 116 L.Ed.2d 628 (1991); *United States v. Sklar*, 920 F.2d 107, 110–11 (1st Cir. 1990). Based upon the facts of this case, we find no error in the district court's determination that it was reasonably foreseeable to appellant that a codefendant would possess a weapon during the drug trafficking activity.

■ Here, the drug transaction involved one kilogram of almost pure cocaine sold for $28,000. Appellant was aware of both the amount and the value of the cocaine. At the sale, three codefendants were present. When asked why three people were needed to conduct the sale, Sánchez replied that that was his way of doing business. Since the defendant knew that substantial quantities of drugs and amounts of cash were involved in the transaction, it was reasonably foreseeable to expect that a codefendant would possess a firearm for the protection of the drug sale. *See Bianco*, 922 F.2d at 913. Here, the presence of numerous co-conspirators at the time of the sale created a show of force. The fact that this was the normal method of doing business is additional evidence from which the district court found that Hernández' possession of a weapon was reasonably foreseeable to appellant.

We find unconvincing appellant's argument that since the quantity of drugs and the amount of money involved here were less than that in *Bianco*, the court should find that the same inference does not apply. By almost any standards, one kilogram of almost-pure cocaine and $28,000 do not represent insignificant amounts of drugs or money. Sánchez' expressed need for additional personnel to be present at the transaction attests to the fact that the codefendants themselves thought that they were involved in a serious undertaking, one that merited the protection afforded by the presence of a firearm. Under such circumstances, we think that the district court committed no error in granting the two-level adjustment.

### B. *Role in the Offense*

Appellant raises two challenges to the guidelines calculation with respect to his role in the offense. First, he argues that the district court erred in not granting him a two-level downward adjustment under U.S.S.G. § 3B1.2(b) for being a minor participant in the criminal activity. He also argues that it was error for the court to give a three-level upward adjustment based on a finding that he was a supervisor under U.S.S.G. § 3B1.1(b).

Because these issues involve the application of the guidelines to the facts, we review the district court's determinations under a clearly erroneous standard. *United States v. Daniel*, 962 F.2d 100, 102–03 (1st Cir.1992); *United States v. Panet–Collazo*, 960 F.2d 256, 261 (1st Cir.1992); *United States v. Dietz*, 950 F.2d 50, 52 (1st Cir. 1991); *United States v. Sabatino*, 943 F.2d 94, 101 (1st Cir.1991); *United States v. Osorio*, 929 F.2d 753, 764 (1st Cir.1991); *United States v. Wright*, 873 F.2d 437, 443–44 (1st Cir.1989).

■ 1. *Minor Participant.* Appellant's claim is that his role as a "steerer" represents the type of activity that the application note for U.S.S.G. § 3B1.2(b) contemplates when it defines a minor participant to mean "any participant who is less culpable than most other participants, but whose role could not be described as minimal." The background note to the commentary to U.S.S.G. § 3B1.2 allows adjustments for a defendant who plays a part in the commission of the offense which makes him "substantially less culpable than the average participant." *See United States v. Batista–Polanco*, 927 F.2d 14, 23 (1st Cir.1991). In demonstrating that he is entitled to a downward adjustment, the burden falls on the appellant to show that the district court's application of the guidelines to the facts was clearly erroneous. *Daniel*, 962 F.2d at 102; *United States v. Ocasio*, 914 F.2d 330, 332–33 (1st Cir.1990). Based upon the record before us, appellant fails to meet this burden.

The undisputed facts reveal that appellant made the initial contact with the source; communicated the amount of drugs to be sold and its price; made all of the arrangements to bring the buyers and sellers together; allowed his house to be used as the situs of the drug transaction; and was present at the moment of the transaction. Whether or not appellant's role is characterized as that of a "steerer", we think that these facts evidence sufficient record support for the district court's decision not to grant a downward adjustment.

2. *Manager/Supervisor Adjustment.* Appellant raises two bases for reversing the district court's determination that appellant's participation in the criminal conduct warranted a three-level increase under U.S.S.G. § 3B1.1(b). First, Sostre argues that, based on the circumstances surrounding his involvement in the drug transaction, the district court's ruling was clearly erroneous. Second, relying on the case of *United States v. Berzon*, 941 F.2d 8 (1st Cir.1991), appellant challenges the district court's use of testimony heard at the trial of Sostre's codefendants in adjusting his sentence, since Sostre had not been apprised in advance of the court's intention to do so.[3] Based on our review of the record,

---

**3.** At oral argument, the government conceded that the upward adjustment must, in this case, stand or fall on the basis of the information contained in the presentence investigation re-

including the factual basis averred by the district court, we find that there is insufficient evidence for finding that Sostre's participation in the criminal conduct amounted to that of a supervisor and, therefore, reverse the district court's three-level upward adjustment.

Commentary to the Sentencing Guidelines offers direction to a court determining whether a defendant had an enhanced role in the offense. In distinguishing a leadership and organizational role from one of management or supervision, the guidelines commentary suggests that a court consider:

[t]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity; and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Comment. (n.3). *Panet–Collazo*, 960 F.2d at 261; *Sabatino*, 943 F.2d at 101. *See also United States v. Beaulieau*, 959 F.2d 375, 379–80 (2d Cir. 1992) (the degree of discretion, nature and degree of participation in planning or organizing the criminal activity, and the degree of control or authority over others determine whether a defendant should be considered as exercising a leadership role). Here, considering these factors, we find inadequate record support for a finding that Sostre exercised a managerial or supervisory role.

Throughout the proceedings, both appellant and the government have characterized the participation in the criminal activity as that of a "steerer". The Second Circuit has defined a "steerer" as a person who "direct[s] buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation." *United States v. Copeland*, 902 F.2d 1046, 1049 (2d Cir.1990) (quoting *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989)). *See also United States v. Lopez*, 937 F.2d 716, 727 (2d Cir. 1991).[4]

■ Like the roles played by the "steerers" discussed in the Second Circuit cases cited above, here Sostre's activities revolved around bringing together the potential buyers and the sellers. When asked by the agents whether one or two kilograms of cocaine might be available, Sostre replied that his source would only provide one kilogram. After mentioning to the buyers that he would meet with his source, he did, in fact, meet with Santiago–Martinez. At no time was appellant shown to have control over the cocaine; nor was he the principal with whom the government agent transacted the sale.[5] At all times he had to make contact with his codefendants before making representations to the buyers. There is nothing in the record to show that he exerted control over any of the other codefendants, with the possible exception of his brother, who served as a lookout. While appellant certainly played an essential role in the overall criminal conduct, we do not think that he acted in a managerial or supervisory capacity. Specifically, we do not believe that the arrangements and the telephone calls made by Sostre, and the fact that he escorted the purchasers to the second floor apartment, elevate him from performing the normal functions of a "steerer" to being a manager or supervisor.

port and the transcript of the sentencing hearing. At any rate, we have not been furnished with a transcript of the codefendants' trial and the district court made no detailed factual findings about the trial evidence. Hence, we accept the government's concession and limit our review accordingly.

4. The Second Circuit has determined that a "steerer" cannot be considered a "minimal participant" for purposes of a four-level reduction pursuant to U.S.S.G. § 3B1.2(a), where the conduct demonstrated knowledge of the drug scheme and of the activities of other participants. *Colon*, 884 F.2d at 1552.

5. In so ruling, we do not accord decretory significance to the label "Steerer." All steerers do not play identical parts. Thus, in terms of role-in-the-offense adjustments, each case must be assessed on its own facts.

The government argues that, relying on our decision in *United States v. Iguaran–Palmar*, 926 F.2d 7 (1st Cir.1991), the district court's role in the offense determination could be upheld based solely on the purity of the drug involved. We disagree.

In *Iguaran–Palmar*, several factors demonstrated managerial or supervisory status. The cocaine had a high degree of purity. In addition, the defendant himself negotiated the price, delivered the cocaine, and claimed access to additional quantities of the drug. The defendant allowed the buyer to take the cocaine on credit. Based on these facts, a panel of this court found that it was not clear error to allow an upward adjustment under U.S.S.G. § 3B1.1(b), since a reasonable inference could be drawn that defendant's ability to deal as described arose from his managerial or supervisory position within the drug organization. *Iguaran–Palmar*, 926 F.2d at 8–11. In the case before us, appellant exhibited significantly less authority. He never had the cocaine in his possession; nor did he have the demonstrated ability either to sell additional quantities or to complete the transaction without his codefendants being present. Under the circumstances before us, we think that it would be stretching the reasoning of *Iguaran–Palmar* too far to hold that *merely* the purity of the drug involved could warrant an upward adjustment under U.S.S.G. § 3B1.1.

We, therefore, conclude that appellant's participation did not rise to a managerial or supervisory level.

### III.

#### Conclusion

In sum:

We affirm the district court rulings granting a two-level increase for the possession of a weapon during a drug transaction and denying a two-level decrease for being a minor participant.

We reverse the district court's three-level upward adjustment for appellant's supervisory role.

The sentence is *vacated* and the case is *remanded* for resentencing at offense level 26.