**UNITED STATES of America, Appellee,**

v.

**Priscilla JACKSON, Defendant, Appellant.**

**No. 92–1686.**

United States Court of Appeals, First Circuit.

Heard May 5, 1993.

Decided Aug. 31, 1993.

Norman E. V. D'Andrea, Providence, RI, by Appointment of the Court, for defendant, appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, RI, was on brief, for appellee.

Before TORRUELLA, OAKES,* and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

On December 4, 1991, a federal grand jury indicted appellant Priscilla Jackson and codefendant Juan Familia, charging conspiracy to possess cocaine with intent to distribute it (Count I) and possession of cocaine with intent to distribute it (Count II). *See* 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). Familia, whose appeal is not part of this case, was also charged with using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Jackson was not charged with this third count. After trial, a jury convicted both defendants on Counts I and II, but acquitted Familia of the firearm charge. Jackson does not appeal her conviction, but contests the district court's calculation of her guideline sentencing range ("GSR") on several grounds. For the reasons that follow, we affirm.

* Of the Second Circuit, sitting by designation.

*I*

On November 11, 1991, police officers from Providence, Rhode Island went to execute a search warrant at the second floor apartment of 142 Bowdoin Street, Providence. At approximately 7:00 p.m., Familia departed from the apartment and drove away in a Dodge minivan. The officers stopped the vehicle and returned with Familia to his apartment.

They entered the kitchen through the rear door using Familia's keys. The kitchen leads directly to the master bedroom, which contained a bed, a crib, an upright dresser, a bureau and a television table. Jackson was on the bed with the couple's child.

Upon entering the apartment, Familia declared: "All I have is a gun. It's under the mattress." The police proceeded to search the apartment. They found the pistol under the mattress. A bottle of inositol, a chemical used to cut or dilute cocaine, sat on top of the bureau. The bottom drawer of the dresser was nailed shut. The officers discovered that the drawer itself had been removed and only the facade remained. On the floor behind the false drawer front, they found a paper bag and a metal box. The paper bag held three plastic bags that contained 299.22 grams of cocaine. The metal box contained $3866 in United States currency and two Rhode Island state lottery receipts, which indicated that Familia had received a total of $2085 in winnings on August 28, 1991. The police also found a small plastic bag containing ten rounds of .38 caliber ammunition in plain view on the floor in front of the bedroom closet.

After trial, a jury convicted Familia and Jackson of conspiring to possess, and possession of, cocaine with intent to distribute it. The sentencing judge held a hearing at which he considered objections raised by the government and Jackson to the Presentence Investigation Report ("PSR"). After argument, he determined the GSR. The judge assigned a base offense level ("BOL") of 24 for the quantity of drugs involved in the offense. He arrived at the BOL by converting the $3866 in currency seized into 109.6 grams of cocaine based on the going price at the time of the offense.[1] To that amount, the judge added the 299.22 grams of cocaine actually seized. Thus, the BOL derived from a total quantity of 408.82 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(10) (Drug Quantity Table) & comment. (n. 12) (Nov. 1991). The court increased the BOL by two levels for possession of a dangerous firearm, as required by U.S.S.G. § 2D1.1(b)(1). The court rejected the two-level decrease for a minor role recommended by the PSR, finding insufficient evidence to warrant such a reduction. *See id.* at § 3B1.2(b). Based on a total offense level of 26 and Jackson's criminal history category of III, the court determined that the GSR was 78 to 97 months.

Jackson appeals from the sentencing judge's GSR calculation, raising three contentions: The court erred by (1) denying her a downward adjustment of two levels based on her minor role in the offense; (2) raising the offense level by two points for presence of a firearm; and (3) converting the $3866 in currency into a quantity of cocaine to determine the BOL. We consider each in turn.

*II*

▮ *Mitigating Role.* Guideline § 3B1.2 allows for a downward adjustment of the offense level for defendants who are less culpable than other participants in the crime. A defendant bears the burden of establishing that she deserves a downward adjustment. *United States v. Ortiz*, 966 F.2d 707, 717 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993). Since role-in-the-offense determinations are fact-bound, we review such findings only for clear error. *See, e.g., United States v. Sostre*, 967 F.2d 728, 732 (1st Cir.1992); *United States v. Brum*, 948 F.2d 817, 820 (1st Cir.1991).

In this case, Jackson was convicted of conspiring to possess, and possession of, cocaine with intent to distribute it. Familia testified that neither defendant was involved with

---

**1.** Based on advice from the Drug Enforcement Administration ("DEA"), the probation officer who prepared the PSR established $1000 as the going price for an ounce of cocaine in November, 1991. Therefore, $3866 converts to 3.866 ounces of cocaine, which is equivalent to 109.6 grams.

drugs, and that the drugs might have belonged to his brother (he was not certain to whom they belonged). Neither the jury nor the sentencing judge credited Familia's contentions, however, and Jackson offered nothing else to meet her burden of proving that she acted in a lesser capacity. We therefore cannot conclude that the judge clearly erred in denying the downward adjustment. *See United States v. Ruiz*, 905 F.2d 499, 508 (1st Cir.1990) ("where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous").

■ *Weapon Possession Adjustment.* The sentencing guidelines require that the offense level be raised two points if a firearm was possessed during a drug trafficking offense. U.S.S.G. § 2D1.1(b)(1). "We have held that, if a weapon was present, the adjustment should be made unless it is clearly improbable that the weapon and the offense were connected." *United States v. McDowell*, 918 F.2d 1004, 1011 (1st Cir.1990) (citing *Ruiz*, 905 F.2d at 507; *United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989)).

Jackson argues that her offense level should not have been raised for presence of a weapon. Jackson asserts that there was no evidence showing that she knew the gun was under the mattress or that she had ever used the firearm. On the contrary, Familia testified that the gun was his and that she knew nothing about the weapon. Moreover, she was not charged for possession of a weapon and Familia was acquitted of possession during a drug trafficking crime. The adjustment, she argues, was unwarranted.

■ The determination that a weapon is present during a drug offense is factual; it will be set aside only for clear error. *United States v. Corcimiglia*, 967 F.2d 724, 726 (1st Cir.1992); *United States v. Pineda*, 981 F.2d 569, 572 (1st Cir.1992). Neither the fact that Jackson was not charged for possession of the weapon nor Familia's acquittal is determinative. The decision not to charge Jackson may have resulted from the government's belief that it could not prove her guilt beyond a reasonable doubt. The acquittal of Familia merely established that the government failed to prove his guilt beyond a rea-

sonable doubt. At sentencing however, the government need only prove facts by a preponderance of the evidence, *Pineda*, 981 F.2d at 574 (citing *United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989)), and uncharged conduct may be attributed to the defendant for sentencing purposes, U.S.S.G. § 1B1.3, comment. (backg'd.) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."); *see, e.g., United States v. Garcia*, 954 F.2d 12, 15 (1st Cir.1992).

The facts are not nearly as favorable to Jackson as she believes. The weapon was definitely present; the police found it under the mattress where Familia said it was located. The sentencing court reasonably inferred that Jackson knew of its presence: Jackson lived in the apartment with Familia; the firearm was hidden under their bed, the ammunition for the pistol lay on the floor, next to the bed, plainly within her view; the apartment was used to traffic narcotics; and the gun was located only a few feet from where the cocaine and inositol were found. Given Familia's numerous other implausible statements, the judge was entitled to disregard Familia's exculpatory statement that Jackson knew nothing of the weapon and that he purchased it to deter car thieves. Even if Familia owned the weapon, under the circumstances detailed above, it was reasonable to find that Jackson also possessed the weapon. *See Corcimiglia*, 967 F.2d at 727. Moreover, "an alternative legal basis for the weapons possession, in and of itself, does not prevent the sentencing court from granting the enhancement." *Id.* (citing *United States v. Almonte*, 952 F.2d 20, 25 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1776, 118 L.Ed.2d 434 (1992); *Ruiz*, 905 F.2d at 508).

■ In any event, when it has been shown that the firearm was present, the relevant inquiry is whether it is "clearly improbable" that the weapon could have been used during the offense. *E.g., Corcimiglia*, 967 F.2d at 727; *McDowell*, 918 F.2d at 1011. Defendant bears the burden of demonstrating that the connection was clearly improbable. *Cor-*

*cimiglia,* 967 F.2d at 728. Nothing in the record disputes the reasonable inference that the gun was connected to the offense. The sentencing judge did not clearly err in imposing the two-level increase.

*Conversion of Currency.* The PSR recommended that the $3866 of currency found in the metal box, which was stored next to the cocaine in the bedroom, be considered proceeds of drug trafficking for sentencing purposes. As a result, the PSR converted the seized currency into a quantity of cocaine based on an approximation of the going price of cocaine in November, 1991 ($1000).[2] The sentencing court agreed and computed the total quantity of cocaine relevant to setting the BOL as the amount of cocaine actually seized and the amount that could be purchased by the seized currency. Including this extra amount of cocaine raised the BOL by two levels.

Jackson contests the conversion of the currency on three grounds. She argues first that because the $1000 price per ounce was an approximation, it is unfair to calculate the quantity on that basis. She next contends that the DEA source for the conversion price was never called as a witness and "technically there was a denial of confrontation." (Appellant's Brief at 9). Finally, she urges that the district court incorrectly deemed the $3866 of currency proceeds of drug transactions because there was evidence that the money could have come from at least two or three other sources.

■ In sentencing cases involving disputed amounts of illicit substances, we have required that reliable information support, by a preponderance of the evidence, the quantity attributed to the defendant. *See, e.g., United States v. Sklar,* 920 F.2d 107, 113 (1st Cir.1990). Under the Guidelines, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.4 comment. (n. 2). In making the estimate, "the judge may con-

sider, for example, the price generally obtained for the controlled substance, . . . [and] similar transactions in controlled substances by the defendant. . . . " *Id.*[3] We have sanctioned the use of estimates when an exact figure cannot be determined, but we demand that "when choosing between a number of plausible estimates of drug quantity . . . a court must err on the side of caution." *Sklar,* 920 F.2d at 113 (quoting *United States v. Walton,* 908 F.2d 1289, 1301 (6th Cir.) (internal quotation omitted), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990)). Ultimately, however, the determination that an amount of money represents proceeds from drug transactions that are part of the same course of conduct as the charged offense, and therefore represents relevant conduct attributable to the defendant, is predominantly factual and reviewable only for clear error. *United States v. Gerante,* 891 F.2d 364, 368 (1st Cir.1989); *Sklar,* 920 F.2d at 114; *see also United States v. Duarte,* 950 F.2d 1255, 1265 (7th Cir.1991) (ascertaining quantity of drugs, which involves conversion of currency into equivalent drug quantity, is factual determination subject to clearly erroneous standard), *cert. denied,* —— U.S. ——, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992).

In *United States v. Gerante,* the defendant was arrested with 4.98 kilograms of cocaine and $68,000 in cash. Gerante objected to treating money found in his residence as an equivalent quantity of contraband for the purpose of determining relevant conduct under § 1B1.3. Following the command of the Guidelines, we approved the practice of estimating the quantity of cocaine that a defendant had exchanged for a sum of money and holding the defendant accountable for that quantity, provided the money represents drug transactions that are part of the same course of conduct as the instant offense. *See id.,* 891 F.2d at 369; *see also Sklar,* 920 F.2d at 113 (approving same practice).

■ Several other circuits have approved the practice in cases involving large quanti-

---

**2.** A DEA agent provided the price estimate to the probation officer. *See supra* note 1.

**3.** The current Guidelines allow for estimation of quantities as well. The language of the commentary has been moved to § 2D1.1 comment. (n. 12).

ties of contraband and currency. *See, e.g., United States v. Hicks,* 948 F.2d 877 (4th Cir.1991) (involving two kilograms of cocaine and $279,550 in cash); *Duarte,* 950 F.2d at 1265 (approving principle in case involving five kilograms and $117,000 cash, but remanding because price range estimate could have resulted in two different GSRs); *United States v. Stephenson,* 924 F.2d 753 (8th Cir.) (233 grams of cocaine and $112,867 cash); *but cf. United States v. González–Sánchez,* 953 F.2d 1184, 1186–87 (9th Cir.1992) (approving principle of converting $1541 into quantity of heroin, but rejecting conversion where no evidence supported connection of currency to drug transactions). Cases involving large amounts of currency more readily support a reasonable inference that the amount seized does not reflect the scale of the offense. When drug traffickers possess large amounts of cash in ready proximity to their drug supply, a reasonable inference may be drawn that the money represents drug profits.

■ Small amounts of currency do not present such a clear case. Nonetheless, the obligation of the sentencing judge remains the same. The judge must determine the quantity of cocaine involved, taking into account all relevant conduct. If the judge supportably finds that the quantity of cocaine seized does not reflect "the scale of the offense," and concludes, by a preponderance of the evidence, that certain amounts of money are drug proceeds from the same course of conduct, then the judge must estimate the amount of drugs that the defendant exchanged for the currency seized.

■ We turn now to Jackson's argument against the conversion of the $3866 to 109.6 grams of cocaine. Neither Jackson's written objections to the PSR nor her argument at the sentencing hearing challenged the $1000 conversion price or the failure of the DEA agent who provided the conversion price to testify at the sentencing hearing. Having failed to raise these contentions before the sentencing court, they may not be raised for the first time on appeal. *See, e.g., United States v. Dietz,* 950 F.2d 50, 56 (1st Cir.1991); *United States v. Uricoechea–Casallas,* 946 F.2d 162, 166 (1st Cir.1991), *see also United*

States v. Zuleta–Alvarez,* 922 F.2d 33, 36 (1st Cir.1990) ("A sentencing hearing need not meet all the procedural safeguards and strict evidentiary limitations of a criminal trial."), *cert. denied,* —— U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991).

■ We are unpersuaded by Jackson's third contention as well. She argues that the currency could have come from other sources and, as a consequence, the evidence did not support a finding that these funds were proceeds of drug transactions which were part of the same course of conduct. In many cases involving small amounts of currency it will be difficult for the government to prove by a preponderance of the evidence that the money is tied to drug trafficking. This, however, is not such a case.

Jackson claims that $2085 of the seized currency were winnings from the Rhode Island Lottery and offered the lottery receipts from August 28, 1991 found in the metal box containing the currency to prove that contention. The balance, she contends, was given to Familia to purchase his van and ship it to his sister in Puerto Rico. These appear to be superficially appealing explanations. They prove unavailing, however.

The sentencing judge rejected her story because Familia never claimed that monies were lottery winnings, thus contradicting Jackson's assertions. Where their stories overlapped, the judge did not believe Familia or his sister, who testified that she sent him $3600 for his car. At the sentencing hearing, Familia's sister was unable to provide any detail concerning the purchase of the car. She could not recall what denominations of currency she sent to her brother. She did not know the make of the vehicle, its age, its mileage, how much her brother charged for the van, or the cost of shipping it to Puerto Rico. The judge therefore rejected the various alternative sources of the currency and determined that the funds were drug proceeds.

We cannot say that the sentencing judge's conclusions were clearly erroneous. It is possible that Familia's sister was not knowledgeable regarding motor vehicles and that she entrusted the details of the transaction to

her brother, satisfied that her kin would treat her honestly. The judge present at the sentencing hearing is in the best position to determine the credibility of the witnesses and the source of the currency, however. *See Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985) (credibility determinations are peculiarly within a trial judge's province). Here, the court discredited a remotely plausible, lawful explanation for the monies and found them to be drug profits.

Finding no clear error, we *affirm.*