**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jorge Garcia RIOS, Defendant–Appellant.**

No. 93–3259.

United States Court of Appeals,
Tenth Circuit.

April 26, 1994.

Michael L. Harris, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender, with him on the brief), Kansas City, KS, for defendant-appellant.

Robert S. Streepy, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with him on the brief), Kansas City, KS, for plaintiff-appellee.

Before BALDOCK and McWILLIAMS, Circuit Judges, and SHADUR, District Judge.*

---

* The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

BALDOCK, Circuit Judge.

Defendant Jorge Garcia Rios, who pleaded guilty to distributing approximately two ounces of cocaine in violation of 21 U.S.C. § 841(a)(1), appeals his sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(2).

On February 2, 1993, a confidential informant ("CI") arranged to purchase two ounces of cocaine from Defendant. The CI met Defendant at approximately 5:00 p.m. on February 2 at 7000 North Dawn, Apartment 301 ("the apartment") in Kansas City, Missouri. Defendant's girlfriend Elizabeth Davis then drove Defendant and the CI to a house located at 1401 New Jersey ("the house") in Kansas City, Kansas to pick up the two ounces of cocaine. Surveillance officers followed them from the apartment to the house. When they arrived at the house, Defendant got out of the car and entered the house. A short time later, he came out of the house and gave the CI two ounces of cocaine. The CI and Ms. Davis left the house, without Defendant, and Ms. Davis dropped off the CI. The CI then met with an undercover officer. The officer field tested the substance for cocaine (a test which was positive) and gave the CI $2400.00 in prerecorded buy money to pay Defendant. The CI returned to the apartment where he gave Ms. Davis the cash to give to Defendant. Surveillance officers then observed Ms. Davis leaving the apartment and traveling to the house.

On February 4, 1993, officers executed a search warrant at the house. During the search, Van Lamont Spears and Amiel Green were present in the house. Upon execution of the warrant, officers discovered eighty-seven grams of cocaine powder, ⅛ ounce of cocaine base, approximately ⅛ ounce of hashish, assorted drug paraphernalia including a triple beam scale, a box of sandwich bags, two bags of hypodermic needles, rolling papers, a shotgun, a sawed-off shotgun, $3,041.51 in U.S. currency, and $585.00 in U.S. Food Stamp Coupons.

Also on February 4, 1993, Elizabeth Davis consented to a search of the apartment, of which she was renter or lessee. Officers seized a total of $46,520.00 in U.S. currency, including $14,920.00 which was discovered in a brown paper bag in the bedroom nightstand and $31,600.00 which was discovered in a large brown envelope under the television set in the television stand. The prerecorded buy money was not found in either of these two stashes of money. Officers also discovered some of Defendant's clothing in the bedroom.

Also sometime on February 4, 1993, the CI negotiated another two-ounce cocaine purchase with Defendant. The CI met Defendant at a Chinese restaurant in Kansas City, Kansas. When the CI attempted to give Defendant $2400.00 for the cocaine, Defendant noticed they were being observed by federal agents and told the CI to keep the money. Defendant and the CI were later apprehended and taken into custody while en route to the house to obtain the two ounces of cocaine.

Defendant pleaded guilty to distributing approximately two ounces of cocaine in violation of 21 U.S.C. § 841(a)(1). Prior to sentencing, the government decided the testimony of Amiel Green, who was one of the individuals present during the search of the house, was inherently unreliable. As a result, the government decided to present only the testimony of Elizabeth Davis to prove the quantity of drugs attributable to Defendant for purposes of sentencing.

Ms. Davis testified that she met Defendant on January 3, 1993, and he stayed at her apartment four or five times between January 16, 1993 and the date of his arrest on February 4, 1993. She further testified that during the time he stayed with her, Defendant kept a few articles of his clothing at her apartment. According to Ms. Davis, although Defendant never admitted doing so, she suspected that Defendant was dealing in narcotics. Ms. Davis testified that Defendant carried a beeper which went off about ten times a day, and she could hear him counting money on occasion when he went into the bedroom and closed the door. Furthermore, she admitted to participating in one drug sale with Defendant—*i.e.*, the February 2, 1993 sale to the CI. On cross examination, Ms. Davis acknowledged that she had never actually seen Defendant with large sums of cash nor had she seen him with greater than personal use quantities of cocaine.

With regard to the cash found in her apartment, Ms. Davis testified that none of the money was hers and that no one had access to the apartment other than herself, Defendant, and her teenage children who visited occasionally. She further testified that, at Defendant's request, she had picked up the brown bag full of money from Defendant at the house and brought it back to the apartment where she hid it in the nightstand. She stated that she was unaware that there was an envelope full of cash in the television stand, but she had been with Defendant when he had purchased three envelopes identical to the one found with the $31,600.00 in it, and two empty envelopes were in her closet.

The sentencing court found Ms. Davis to be a "very credible witness," and believed her testimony. The court found by a preponderance of the evidence that Defendant had strong connections to Ms. Davis' apartment and was in fact staying or living with her off and on from at least January 16, 1993 to the time the search was conducted. The court also found by a preponderance that the entire $46,520.00 "did in fact belong to defendant, or at least he had some ownership interest in it," and that there was "ample circumstantial evidence showing that this money came from drug transactions in which the defendant at least participated, if not was solely responsible for." Applying U.S.S.G. § 2D1.1, comment. 12, which allows for approximation of the quantity of the controlled substance where there is no drug seizure or where the amount seized does not reflect the scale of the offense, the court then found that "an estimate may be used in determining the relevant conduct and the amount of drugs involved." Thus, the court concluded, "based upon all the information which the Court has before it which in the Court's opinion meets the criteria of minimum indicia of reliability, [ ] the entire $46,520.00 does constitute rele-

vant conduct for the purpose of determining the base level of the offense." The sentencing court then divided $46,520.00 by $1200.00 (the amount the CI had paid Defendant for one ounce of cocaine) to reach the conclusion that the $46,520.00 represented 38.77 ounces, or 1,099.13 grams, of cocaine. This quantity of cocaine placed Defendant's base offense level at twenty-six from which the court deducted three points for Defendant's acceptance of responsibility, giving him an offense level of twenty-three. With a criminal history category of I, Defendant's applicable guideline range was forty-six to fifty-seven months. The court sentenced Defendant to fifty-two months imprisonment, three years supervised release, and imposed a fine of $1,000.00.

While Defendant concedes that a court can convert seized cash to drug quantities in appropriate circumstances, he alleges that the sentencing court improperly did so here. First, Defendant argues that because Elizabeth Davis could have been charged as a codefendant, her testimony was inherently unreliable and could not provide the minimum indicia of reliability to support the sentencing court's connection of the $46,520.00 to him. *See United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir.1993) (information relied on at sentencing must have a minimum indicia of trustworthiness). Second, Defendant argues that from the evidence before it, the sentencing court could not have found by a preponderance that the money discovered in the apartment resulted from a common scheme or plan or the same course of conduct as the drug trafficking offense of conviction.

## I.

■ With regard to Defendant's first argument, "[t]he credibility of a witness and weight of his [or her] testimony are for the trier of fact alone," in this case the sentencing court. *See United States v. Hager*, 969 F.2d 883, 888 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). The sentencing court found Ms. Davis to be a "very credible witness," and we will not disturb this finding. Thus, we move on to address Defendant's second argument.

## II.

■ In order to determine the base offense level in a drug case, the district court must calculate the quantity of drugs involved. *See* U.S.S.G. § 2D1.1(a)(3). The guidelines clearly indicate that the court should include all relevant quantities of drugs in its calculation. *See* U.S.S.G. § 2D1.1, comment. 12. Whether a quantity is relevant is determined by applying U.S.S.G. § 1B1.3(a)(2), which is the applicable guideline for determining relevant conduct. *See* U.S.S.G. § 2D1.1, comment. 12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct)"). Under § 1B1.3(a)(2), the test for relevant conduct is whether the conduct was part of the "same course of conduct or common scheme or plan as the offense of conviction." Thus, while the sentencing court may look beyond the charges in the indictment for types and quantities of drugs not charged in the indictment, *see United States v. Underwood*, 982 F.2d 426, 429 (10th Cir.1992); *United States v. Boyd*, 901 F.2d 842, 844 (10th Cir.1990), the sentencing court must find that the types and quantities of drugs not specified in the count of conviction are part of the same course of conduct or part of a common scheme or plan as the offense of conviction, *see United States v. Roederer*, 11 F.3d 973, 978 (10th Cir.1993); *United States v. Barela*, 973 F.2d 852, 856 (10th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1021, 122 L.Ed.2d 167 (1993). As a result, "[t]he prosecution must prove, and connect to the convicted offense, the additional quantities by a preponderance of the evidence." *United States v. Ross*, 920 F.2d 1530, 1538 (10th Cir.1990).

■ While we have never addressed whether sums of cash can be converted to drug equivalents for purposes of sentencing, today we join our sister circuits in holding that they may, so long as the quantities are determined to be relevant quantities under § 1B1.3. *See United States v. Jackson*, 3 F.3d 506, 511 (1st Cir.1993); *United States v. Hicks*, 948 F.2d 877, 882 (4th Cir.1991); *United States v. Gerante*, 891 F.2d 364, 369 (1st Cir.1989); *see also United States v. Riv-*

era, 6 F.3d 431, 446 (7th Cir.1993) (conversion of cash permissible with showing by preponderance that cash was proceeds of conspiracy's drug activity), *cert. denied,* — U.S. —, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994). We find support for this cash-to-drug-quantity conversion in commentary note 12 of § 2D1.1, which directs the sentencing court as follows:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, *the price generally obtained for the controlled substance,* financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

(emphasis added). Thus, in a case where cash is seized and where either no drug is seized or the amount seized does not reflect the scale of the offense, the sentencing court may estimate the quantity of drugs with which Defendant was involved by converting cash to its drug equivalent, provided the court finds by a preponderance that the cash is attributable to drug sales which were part of the same course of conduct or common scheme or plan as the conviction count. *See Jackson,* 3 F.3d at 510; *Hicks,* 948 F.2d at 882–83; *Gerante,* 891 F.2d at 369. Common identity of participants and similar role in the activity are the key factors in identifying whether the uncharged drug activities were part of a common scheme or plan, while similarity, regularity, and temporal proximity of the uncharged drug activities to the conviction count are the significant elements used to determine whether the uncharged drug activities are part of the same course of conduct. *See Roederer,* 11 F.3d at 979.

■ We review the district court's finding of drug quantity for clear error, *United States v. Ortiz,* 993 F.2d at 207, examining the two stashes of money found in Elizabeth Davis' apartment separately. We will reverse only if "the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Shewmaker,* 936 F.2d 1124 (10th Cir.1991), *cert. denied,* — U.S.—, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992).

### A.

■ We conclude the sentencing court had enough evidence before it to find by a preponderance that the $14,920.00 in the brown paper bag resulted from conduct relevant to Defendant's conviction count. From Ms. Davis' testimony, the court could reasonably conclude that the $14,920.00 was attributable to Defendant and was the result of Defendant's drug activities because, according to Ms. Davis, Defendant had called her and asked her to come pick up the bag from him at the house out of which Defendant conducted his drug sales. Furthermore, the evidence supported a finding that the drug activities from which Defendant earned the $14,920.00 were part of the same course of conduct as Defendant's offense of conviction because the activities were connected by similarity and temporal proximity. The similarity of the $14,920.00 drug sales to the conviction drug sale was evidenced by the fact that the drug sale giving rise to Defendant's conviction count occurred at the house where Ms. Davis picked up the $14,920.00. The temporal proximity between the count of conviction and the $14,920.00 drug sales was evidenced by the fact that Ms. Davis, who had only known Defendant for one month, had picked up the bag of money, leading to an inference that the $14,920.00 came from drug sales conducted by Defendant relatively close in time to the drug sale that resulted in the count of conviction. *See Roederer,* 11 F.3d at 979 (to conclude that certain conduct constituted relevant conduct, there must be "sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct"). Thus, there was factual support in the record for the court's finding, and we cannot say that the court committed error by converting the $14,920.00 into drug quantities attributable to Defendant for purposes of sentencing.

### B.

We also hold there was sufficient factual support for the court's conclusion that the $31,600.00 in the envelope could be converted to a drug quantity and applied to Defendant's sentence. The court's finding that the money belonged to Defendant was circumstantially supported by Ms. Davis' statement that none of the money was hers, by her statement that no one other than herself, Defendant, and her children had access to the apartment, by corroborating evidence which showed Defendant had access to the apartment, and by Ms. Davis' testimony that she had been with Defendant when he purchased the envelope in which the money was found. The court's finding that the money came from drugs was supported by the fact that Defendant had no other apparent source for that kind of income and by the fact that Defendant had access to a drug trade extensive enough to earn large sums of money, which is apparent from the $14,920.00 that Ms. Davis picked up from the drug house. Finally, there was evidence from which the court could conclude that the $31,-600.00 came from drug activities that were part of the same course of conduct as the offense of conviction. *See Roederer,* 11 F.3d at 978. Similarity and temporal proximity between the drug activities that resulted in the $31,600.00 and Defendant's conviction count could be inferred from the fact that Defendant had purchased the envelope which held the $31,600.00 within the month preceding the drug sale which led to his conviction and from the fact that the money was hidden in Ms. Davis' apartment, where Defendant had been an occasional resident for only a month. Thus, the court did not err in including the $31,600.00 as relevant conduct and in converting it to drug quantities for sentencing purposes.

AFFIRMED.