UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4575

RONALD LEE PENNIX,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4576

FRANKLIN ROOSEVELT WEST, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Lynchburg.
James C. Turk, District Judge.
(CR-93-63)

Argued: April 9, 1998

Decided: May 20, 1998

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED**: Joseph Abraham Sanzone, JOSEPH A. SANZONE
ASSOCIATES, Lynchburg, Virginia, for Appellant Pennix; Melissa

Windham Friedman, Roanoke, Virginia, for Appellant West. Anthony Paul Giorno, Assistant United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** Anthony F. Anderson, Roanoke, Virginia, for Appellant West. Robert P. Crouch, Jr., United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Franklin Roosevelt West, Jr. and Ronald Lee Pennix for their participation in a large scale narcotics conspiracy. The district court sentenced West to 292 months imprisonment and Pennix to 181 months imprisonment. West and Pennix appeal, asserting several trial and sentencing errors. Finding no error, we affirm.

**I.**

The evidence at trial demonstrated that West and Pennix participated in a large, loose-knit conspiracy to distribute crack and powder cocaine between January 1993 and November 1996 in Lynchburg and Campbell County, Virginia. West was a major supplier of both crack and powder cocaine, which was then sold by many of West's underlings, including Pennix.

On June 13, 1996, Lynchburg police, acting on a confidential tip that Pennix had twice sold cocaine from his residence within a 24-hour period, arrested Pennix at his home. In conjunction with this arrest, police seized a loaded .380 caliber handgun and a digital pager from Pennix's person, 22.82 grams of crack cocaine from his back yard hidden in a can near an oil tank, a nine millimeter handgun from his bedroom, $800 from a dresser drawer and $5,810 of currency

2

stored in a briefcase. Police also found digital scales and ammunition in the kitchen, and firearms in other locations throughout the house.

Based on Pennix's role in the conspiracy, he was charged with and convicted of conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 846 (West 1981 & Supp. 1997), distribution of cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1981 & Supp. 1997), and possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C.A. § 924(c)(1) (West Supp. 1997). Pennix also forfeited the $6,610 seized during the search of his home pursuant to 21 U.S.C.A. § 853 (West Supp. 1997).

West was charged with conspiracy to distribute crack and powder cocaine in violation of 21 U.S.C.A. § 846, and with engaging in a continuing criminal enterprise in violation of 21 U.S.C.A. § 848 (West 1981 & Supp. 1997). The jury convicted West of the conspiracy charge but acquitted him of the continuing criminal enterprise charge.

On appeal, both Pennix and West challenge their convictions; Pennix also challenges his sentence. We first turn to Pennix's arguments, and then to those of West.

**II.**

**A.**

Pennix initially claims that the district court erred in denying his proposed instruction regarding the evidence necessary to sustain a conspiracy conviction. Pennix's proposed instruction states:

> A buyer or seller of illegal substances does not automatically become a member of a conspiracy. The prosecution must establish beyond a reasonable doubt that the [d]efendant knew the existence and scope of the conspiracy and sought to promote its success. The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy.

3

Pennix argues that the court's failure to include this instruction misled the jury into believing that a simple association with conspirators through several mere buy-sell transactions is enough to establish participation in the conspiracy. We reject Pennix's claim because the actual jury charge substantially included Pennix's proposed instruction.

The district court's denial of a requested jury instruction is reviewed only for abuse of discretion. See United States v. Stotts, 113 F.3d 493, 496 (4th Cir. 1997). A district court abuses its discretion only if the instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (quoting United States v. Camejo, 929 F.2d 610, 614 (11th Cir. 1991)).

Here, the district court instructed the jury that

> a conspiracy is a combination or an agreement of two or more persons to join together to attempt some unlawful purpose. . . . [M]ere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy. . . . [P]roof of a single buy relationship standing alone would not be sufficient evidence to establish a conspiracy to distribute a controlled substance.

Accordingly, because the district court correctly conveyed to the jury that evidence of a mere buy-sell relationship as well as evidence of mere association does not constitute a conspiracy, no error occurred.

**B.**

Pennix next argues that the district court abused its discretion in providing the jury with a copy of the indictment but not of the jury instructions. Pennix claims that in light of the complexity of his case,

4

failure to give a copy of the instructions to the jury led to unfair confusion and predisposed the jury to the government's case.

We review the district court's decision to provide the jury with copies of the indictment and jury instructions for abuse of discretion. See United States v. Polowichak, 783 F.2d 410, 413 (4th Cir. 1986) (submission of indictment); United States v. Sotelo, 97 F.3d 782, 792 (5th Cir.) (submission of jury instruction), cert. denied, 117 S. Ct. 620 (1996). Pennix's case was not so complex that the jury would require a copy of the jury instructions. Pennix was tried with only West and one other co-defendant, John Martin (who plead guilty during the trial), on three simple drug and firearms violations. Moreover, Pennix has not produced any evidence that the district court's decision not to provide the jury a copy of the instructions resulted in unfair prejudice or confusion. Accordingly, the court did not abuse its discretion.

Pennix nonetheless claims that the Eighth Circuit's decision in United States v. Van Dyke, 14 F.3d 415 (8th Cir. 1994) compels a finding in his favor. Pennix is mistaken. Because the trial in Van Dyke pertained to a complex series of transactions and a multiple count indictment involving bank fraud, the Eighth Circuit found that the district court's failure to provide a copy of the jury instructions along with a copy of the indictment led to a rare instance of reversible error. Id. at 422. Numerous other errors at trial, however, also contributed to reversal in Van Dyke. The district judge constantly made inappropriate and prejudicial comments in front of the jury, failed to charge the jury orally with all of the instructions, and had not reduced any of the instructions to writing. Id. at 418, 423. Once deliberations began, the Van Dyke jury also expressly requested a copy of the instructions, which the court initially refused to provide. Id. at 423. Consequently, the Eighth Circuit reasoned that "while there is perhaps no single instance involving error so prejudicial to warrant reversal, we are convinced that, considered as a whole, the rights of the defendant were so prejudiced thereby as to deprive [him] of that fair and impartial trial." Id. at 424 (emphasis added) (internal quotations and citations omitted).

Pennix's trial, by contrast, suffered from none of these infirmities. As we have stated, Pennix's trial was hardly complex, and the trial judge presided over Pennix's case with equanimity and decorum,

5

committing none of the trial errors found in <u>Van Dyke</u>. Thus, Pennix garners little support from a case so factually dissimilar to his own as <u>Van Dyke</u>.

**C.**

Pennix finally claims that the district court erred in converting the currency seized from his home into its drug equivalent for purposes of calculating his sentence. Pennix specifically contends that the $6,610 seized from his bedroom dresser and briefcase was not proceeds from narcotics sales but rather income from such lawful employment as working at a car wash, breeding rottweiler dogs, and selling refurbished vehicles. Pennix, however, provided no evidence that this money derived from lawful sources, and so we reject his claim.

We review the district court's calculation of drug amounts only for clear error. <u>United States v. Hicks</u>, 948 F.2d 877, 881 (4th Cir. 1991). When calculating the amount of narcotics attributable to defendant, the court should include all relevant quantities of drugs in this calculation. <u>See</u> U.S.S.G. § 2D1.1 comment. 12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level"); U.S.S.G. § 1B1.3(a)(2) (relevant conduct provision). Seized currency may be converted to its drug equivalent for purposes of sentencing where the government furnishes some evidence that the seized currency derived from the defendant's drug related activity. <u>See Hicks</u>, 948 F.2d at 882 (cash seized from defendant's home should be considered as relevant conduct and used in determining the base offense level); <u>see also United States v. Otis</u>, 127 F.3d 829, 836 (9th Cir. 1997) (where evidence connects money seized to drug related activities, conversion is proper), <u>cert. denied sub nom.</u>, <u>Romo v. United States</u>, 118 S. Ct. 1400 (1998); <u>United States v. Rios</u>, 22 F.3d 1024, 1027-28 (10th Cir. 1994) (same); <u>United States v. Rivera</u>, 6 F.3d 431, 446 (7th Cir. 1993) (same).

Here the government demonstrated an adequate connection between the seized currency and Pennix's drug activity. At least one witness testified that he regularly purchased narcotics from Pennix for over two years at the same home where the money was found. The currency seized was also an unusually large sum for Pennix's admit-

6

ted earning capacity, and was found along with guns, a scale, and crack cocaine. See United States v. Jackson, 3 F.3d 506, 511 (1st Cir. 1993)("When drug traffickers possess large amounts of cash in ready proximity to their drug supply, a reasonable inference may be drawn that the money represents drug profits").

Pennix, on the other hand, did not offer an alternative legitimate explanation for the source of the drug proceeds. Pennix's presentencing report notes that he earned about $200 a week from his most recent job at a car wash, and that his most sizeable earnings to date amounted to $2,728 from his eight-month stint in 1992 as a bag boy in a grocery store. Although Pennix claims to have earned the seized currency breeding rottweiler dogs, only Pennix's father, who is hardly an unbiased witness, testified in the vaguest generalities to Pennix's alternative sources of income. Because "[t]he judge present at the sentencing hearing is in the best position to determine the credibility of the witnesses and the source of the currency," the district court did not err in discrediting Pennix's "remotely plausible, lawful explanation for the monies," and thus converting the seized currency into its drug equivalent. Id. at 512.

**III.**

Finally, we turn to West's challenge to his conviction.

West argues that the district court's Allen charge impermissibly coerced the jury's verdict because the charge did not include a reminder to the jurors in the majority to consider the views of those in the minority.

We review the district court's decision to give an Allen charge as well as its contents for abuse of discretion. United States v. Cropp, 127 F.3d 354, 359 (4th Cir. 1997), cert. denied , 118 S. Ct. 898 (1998). For an Allen charge to be proper, it "must not coerce the jury, and it must be fair, neutral and balanced." Id. at 359-60; see also United States v. Burgos, 55 F.3d 933, 936 (4th Cir. 1995). We have repeatedly noted that "the most egregious mistake that can be made in the context of an Allen charge is for a district court to suggest, in any way, that jurors surrender their conscientious convictions." Cropp, 127 F.3d at 360 (quoting Burgos, 55 F.3d at 939); see also Carter v.

7

Burch, 34 F.3d 257, 265 (4th Cir. 1994). We have also stressed that a proper Allen charge instructs jurors in the majority to consider the views of the minority and vice versa. Cropp, 127 F.3d at 360. However, we have been reluctant to proscribe a set formula for an Allen charge, but rather "leave to the particular judge the task of formulating his or her complete instruction." Burgos , 55 F.3d at 941 n.9. Thus, so long as the specific Allen charge at issue sufficiently conveys the above principles, we will uphold its validity.

Here, the district court's Allen charge, although not a model of clarity, was adequate. The court stressed to the jury that "no juror is expected to yield to a conscientious conviction he or she may have," and that each juror must arrive at his or her verdict "without surrendering your conscientious convictions." The court also added that "if a substantial majority . . . are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one;" and "on the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves whether they do not have a reason to doubt the correctness of [their] judgment" in light of the other juror's views. Accordingly, the charge was sufficient to withstand Pennix's challenge.

Indeed, "the jur[ors'] own behavior reassures us that they were not coerced by the instruction." Cropp, 127 F.3d at 360. We have previously found that a mixed verdict following an Allen charge strongly suggests that the jury was not coerced. Id. After the Allen charge here, the jury returned a verdict of guilty on the conspiracy charge but not guilty on the continuing criminal enterprise charge. This mixed verdict, combined with the charging language itself, sufficiently assures us that the jury was not coerced by the Allen  charge in this case.

AFFIRMED.

8