**UNITED STATES of America, Appellee,**

v.

**James P. FLORENCE, Defendant, Appellant.**

**No. 97–2194.**

United States Court of Appeals, First Circuit.

Heard April 8, 1998.

Decided May 4, 1998.

J. Martin Richey, Federal Defender Office, for appellant.

Ben T. Clements, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for the United States.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant James P. Florence strives to convince us that the district court erred when it ordered a federal sentence to be served consecutively to the undischarged portion of certain state sentences. We are not persuaded.

## I.

### Background

In October 1993, the appellant asked a cousin who lived in Kentucky to buy guns for him. The cousin complied. Florence then brought the firearms into Massachusetts. At the time the appellant purchased, possessed, and transported the weapons, he was a convicted felon (manslaughter and unlawful possession of a firearm).

On February 15, 1994, masked men used one of the transported firearms, a Norinco semi-automatic pistol, to rob a pizza parlor in Rosindale, Massachusetts. A brigand armed with that pistol shot a bystander, leaving him paralyzed. Some weeks later, a state trooper attempted to stop the appellant for a motor vehicle infraction. During an ensuing chase, Florence threw the same Norinco pistol onto the median strip where the authorities subsequently recovered it.

Like the mills of the Gods, *see* George Herbert, *Jacula Prudentum* (1651), the wheels of justice sometimes grind slow. Nearly three years elapsed before a federal grand jury charged the appellant with transporting a firearm across state lines and being a felon in possession of a firearm. *See* 18 U.S.C. § 922(a)(3) and (g)(1) (1994). Both counts of the indictment referred to the Norinco semi-automatic pistol. The appellant eventually pled guilty to these charges. The district court imposed a 60–month incarcerative term for the transportation offense and a 96–month term for the felon-in-possession offense. The court stipulated that these sentences were to be served concurrently with each other, but consecutively to all undischarged state sentences.

At the time of the federal disposition (July 18, 1997), the appellant was serving a two-year state sentence for possession of heroin with intent to distribute (State Sentence No. 1), which he had begun on April 17, 1996. Between April and August 1996, he received (and elected not to contest) five separate citations for probation violations in connection with (1) a charge of heroin possession, (2) a charge of marijuana possession, and (3) three separate motor vehicle offenses. In the same time frame, he also pleaded guilty to several outstanding state charges, including two separate charges related to possession of cocaine; a charge of possession of heroin with intent to distribute; and a charge of possession of marijuana with intent to distribute. The state courts revoked the appellant's probation, imposed concurrent sentences for the probation violations and the new offenses, and specified that the new sentences (none of which exceeded one year, and all of which expired on or before May 21, 1997) would run concurrently with State Sentence No. 1. During the same period, the state courts likewise revoked a one-year term of probation stemming from an underlying narcotics offense and imposed a one-year sentence (State Sentence No. 2) to be served "from and after" the expiration of State Sentence No. 1.

When Judge Harrington convened the federal disposition hearing, the appellant had served approximately 15 months of the total of three years' immurement levied against him for the compendium of state offenses. The remaining time (roughly 21 months) constituted the undischarged portion of his state sentences (Nos. 1 and 2).

## II.

### The Legal Landscape

■ Appellate review of a district court's application of the sentencing guidelines demands a bifurcated inquiry. The court of appeals affords plenary review to the sentencing judge's assessment of a guideline's legal meaning and scope, but reviews the judge's factfinding only for clear error. *See United States v. Brewster*, 1 F.3d 51, 54 (1st Cir.1993); *United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992).

■ Ordinarily, federal sentencing proceeds according to the version of the guidelines in effect at the time that sentence is

pronounced. *See United States.v. Harotunian*, 920 F.2d 1040, 1041–42 (1st Cir.1990). An exception exists, however, if changes in the guidelines between the date of the offense and the date of disposition threaten the defendant with harsher treatment. In deference to ex post facto concerns, the sentencing court then customarily applies the version of the guidelines that obtained when the defendant committed the crime. *See id.*

USSG § 5G1.3 covers the sentencing of defendants who are subject to undischarged terms of imprisonment (federal or state). In the instant case, the government and the appellant agree that the 1993 version of section 5G1.3, in effect on the date Florence committed the federal offenses, should control.[1] We therefore abjure independent consideration of the point and proceed to analyze the appellant's claim under the November 1993 edition of the sentencing guidelines.

We reproduce in the margin the text of this guideline as it read in 1993.[2] In general, this guideline contemplates three somewhat different types of situations: subsection (a) deals with federal offenses committed during the pendency or service of a state sentence; subsection (b) deals with state sentences arising out of conduct related to the offense of conviction (i.e., conduct which must be taken into account when calculating the federal sentence); and subsection (c) applies to all other federal sentences imposed while the defendant is serving an undischarged term of imprisonment. At the time of the federal

disposition in this matter, the appellant was serving a state term of imprisonment for conduct wholly unrelated to his federal firearms offenses (State Sentence No. 1), he had pending another undischarged state term of imprisonment for unrelated conduct (State Sentence No. 2), and he had perpetrated the federal offenses prior to the commission of the state offenses that underlay those sentences. Consequently, section 5G1.3(c) applies here.

In its 1993 iteration, section 5G1.3(c) provides that, in cases not covered elsewhere in section 5G1.3, "the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." Former Application Note 3 placed a gloss on this language, admonishing that "[t]o the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in the combined sentence of imprisonment that approximates the total punishment that would have been imposed under section 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time." In turn, section 5G1.2 directed that, in regard to multiple counts of conviction, the sentence on each count should run consecutively to the extent necessary to produce a combined sen-

1. The basis for this concession is that the Sentencing Commission not only changed the wording of section 5G1.3 in the intervening period, but also entirely eliminated USSG § 5G1.3, comment. (n.3) (hereinafter "former Application Note 3") in writing the November 1995 edition of the guidelines. The appellant contends, and the government accepts, that deleting former Application Note 3 arguably made it more difficult to secure a concurrent sentence.

2. The guideline provides:
§ 5G1.3 Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment
(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run con-

secutively to the undischarged term of imprisonment.
(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
(c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.
USSG § 5G1.3 (Nov.1993). All citations to the guidelines are to that edition, unless otherwise expressly indicated.

tence equal to the total punishment when all offenses are considered together. *See* USSG § 5G1.2(b)-(d).

As if this litany of rules did not, in itself, create a sufficient maze, we note that in 1993, as now, the procedure for determining the offense level on multiple counts of conviction required the sentencing court to "group" the counts to the extent practicable. *See* USSG § 3D1.2. Under the applicable grouping rules, counts that "involve substantially the same harm" form a single group. USSG § 3D1.2. The court then calculates the offense level for each count within each group, attributes to each group the highest offense level of any count within it, compares the groups to ascertain which has the highest offense level, considers certain further adjustments (not relevant to our inquiry here), and sentences the defendant based on that triage. *See United States v. Hernandez Coplin*, 24 F.3d 312, 319–20 (1st Cir.1994).

Interleaving this procedure with the analytic approach envisioned by former Application Note 3 results in the following paradigm for purposes of USSG § 5G1.3(c). The district court must first group the state convictions that undergird the undischarged state sentences as if they were federal offenses and ascertain what term of imprisonment those offenses would yield had they been directly subject to the federal sentencing guidelines. The court then must calculate the total sentence that the defendant would have received had all the offenses been prosecuted federally (in a single proceeding). If the projected sentence exceeds the sentence that the defendant ordinarily would serve on the federal convictions alone, the district court should compensate for this disparity by running all (or some part) of the defendant's federal sentence consecutively to the undischarged portion of his state sentence. If, however, the projected sentence does not exceed the time that the defendant ordinarily would serve on the federal sentence alone, the district court should run the federal sentence concurrently with the undischarged state sentence.

This somewhat awkward model is not obligatory in every case to which section 5G1.3(c) pertains. By its terms, former Application Note 3 applies only "to the extent practicable," and, thus, the paradigm that we have outlined should not be employed blindly or when doing so "unduly complicates or prolongs the sentencing process." USSG § 5G1.3, comment. (n.3). Not surprisingly, then, experience has shown that the paradigm applies to "a good many of the cases likely to arise under subsection (c)," *United States v. Gondek*, 65 F.3d 1, 3 (1st Cir.1995), but not to all such cases.

## III

### *Discussion*

■ In this case, the district court sentenced the appellant to a 96–month term of imprisonment,[3] to be served consecutively to the undischarged portion of his state imprisonment. On appeal, Florence avers that the court failed to follow the method prescribed by former Application Note 3 in determining whether his federal sentence should run consecutive to, or concurrent with, his state sentences. He further contends that, had the court employed this methodology, it would have concluded that the federal sentence should run concurrently with the undischarged portion of his state immurement.

To reach this result, the appellant purports slavishly to follow the paradigm outlined above. He aspires to assemble all his state offenses in one group and the two federal offenses of conviction in another. But his efforts are somewhat less than comprehensive: when constructing his state grouping, the appellant only considers the narcotics convictions and ignores all the other convictions, some because (in his view) they are subsumed under the umbrella of the narcotics convictions and the rest—particularly, the vehicular offenses and the probation revocations—because they have no federal analogues and, in any event, are irrelevant. On this basis, the highest offense level within the state drug-crime group is 12 (for possession

---

**3.** For this purpose, we ignore the concurrent 60–month federal sentence, as its existence does not affect our analysis.

with intent to distribute cocaine). In contrast, the federal offenses carry an offense level of 21. From this premise, the appellant concludes that, by operation of former Application Note 3, his total sentence should not exceed 96 months (the apex of the guideline sentencing range prescribed for a defendant who has an offense level of 21 and who, like Florence, is in criminal history category VI). *See* USSG Ch.5, Pt. A (Sentencing Table). A fortiori, the district court should have run his federal sentence concurrently with the undischarged portion of his state sentences.

The appellant's approach is flawed in several respects. In *United States v. McCarthy*, 77 F.3d 522 (1st Cir.1996), we noted that when section 5G1.3(c) arguably applies, "a sentencing court should initially look to [former Application] Note 3 for guidance in calculating an appropriate incremental punishment, [but] it nonetheless has discretion to follow a different course in a small number of cases where adherence to Note 3 would be impracticable and result in an inappropriate incremental punishment." *Id.* at 538. As the district court recognized, this is such a case. Former Application Note 3 does not tell a federal court how to implement a grouping analysis where, as here, the state charges—such as probation violations—have no specific analogues in the sentencing guidelines.

This lack of a ready comparison not only renders impracticable resort to the paradigm spawned by former Application Note 3, but also ineluctably leads a rudderless sentencing court to Chapter 7 of the Guidelines Manual. That chapter instructs that "any sentence of imprisonment for a criminal offense that is

imposed after revocation of probation or supervised release [should] be run consecutively to any term of imprisonment imposed upon revocation." USSG § 7B1.3, comment. (n.5). We already have had occasion to construe the meaning of this commentary in a context in which the defendant was serving an undischarged state term of imprisonment for, *inter alia*, parole revocation. *See McCarthy*, 77 F.3d at 538 (stating that this commentary suggests that "imposing a wholly consecutive sentence was correct"); *see also United States v. Torrez*, 40 F.3d 84, 87–88 (5th Cir.1994) (holding that USSG § 7B1.3 favors the imposition of a consecutive sentence when the existing sentence results from parole revocation).

Because we see no relevant distinction between parole revocation and probation revocation, we hold that this aspect of the *McCarthy* court's analysis controls here.[4] At the time of the federal disposition hearing, the appellant was serving a two-year term of incarceration (State Sentence No. 1) that overlapped with five concurrent sentences stemming from probation violations. Moreover, upon completion of this sentence, Florence forlornly faced a further one-year term (State Sentence No. 2) based entirely on a probation revocation. Hence, even had the district court applied former Application Note 3, it could have run Florence's sentence consecutively under USSG § 7B1.3.[5] *See McCarthy*, 77 F.3d at 538.

The appellant has a fallback position. He contends that, save for the two-year sentence for distribution of heroin (State Sentence No. 1) and the consecutive one-year sentence for a single probation violation

---

4. To be sure, *McCarthy* has another, more problematic aspect. The opinion indicates that when the conduct giving rise to the state sentences is unrelated to the conduct giving rise to the federal sentence, "the rationale of the guidelines' grouping rules does not apply" and the argument for strict adherence to the sentence-calculation method prescribed by former Application Note 3 is at its nadir. *McCarthy*, 77 F.3d at 538. We are skeptical about this conclusion, but we need not probe the point too deeply. *McCarthy*'s alternative rationale, combined with other circumstances that render it infeasible here to follow the paradigm contemplated by former Application Note 3, fully disposes of the case at hand.

5. We find further footing for this result in USSG § 5G1.3, comment. (n.4), which approves consecutive sentencing for the commission of a federal offense while on state or federal probation, parole, or supervised release, "in order to provide an incremental penalty for the violation." USSG § 5G1.3 comment. (n.4); *see Gondek*, 65 F.3d at 2–3. Although this application note does not literally apply to Florence's situation, it illustrates the Commission's overall view that defendants normally should not enjoy the luxury of concurrent sentences when they have violated the terms of parole or probation.

(State Sentence No. 2), all his other state sentences had expired by the time Judge Harrington. imposed the federal sentence, and thus are irrelevant for federal sentencing purposes. He argues, in effect, that the federal sentence should at the very least run concurrently with the balance of State Sentence No. 1 (roughly nine months), as the heroin offense, *simpliciter,* has a ready federal analogue, and the overlapping terms imposed in consequence of the five probation violations all had lapsed. In his view, this left a "gap" into which the paradigm contemplated by former Application Note 3 should have been inserted.

The appellant's prior state sentences are discussed in Part I, *supra.* To assist the reader, we have. prepared and reproduce in the Appendix a chronological chart reflecting those sentences. After studying this chart, we conclude that the appellant's reasoning does not hold water.

By its own language, former Application Note 3 creates a paradigm that operates only "[t]o the extent practicable." We do not think it is "practicable" to compute the appellant's federal sentence in the manner that he suggests. After all, the one-year from-and-after sentence imposed in response to the appellant's latest probation violation (State Sentence No. 2) has no federal analogue and, based upon the authorities previously cited, that sentence ought not to be served concurrently with a subsequent federal sentence. *See McCarthy,* 77 F.3d at 538–39; *Torrez,* 40 F.3d at 87–88; *see also* USSG § 7B1.3, comment. (n.5). Thus, were the district court bound to adhere to the appellant's construct, it would be forced to run the federal sentence concurrent with the "gap"—the nine-month undischarged portion of the state sentence that the appellant was serving on the date of the federal disposition—and then run the federal sentence consecutive to State Sentence No. 2 from and after the expiration of State Sentence No. 1. *See* Appendix. Because this odd juxtaposition would "unduly complicate[ ] . . . the sentencing process," USSG § 5G1.3(c), comment. (n.3), use of the paradigm is not obligatory here. Former Application Note 3 does not demand that a federal sentencing court engage in elaborate

mental gymnastics that far exceed what is customary even within the convoluted federal sentencing scheme.

The appellant's riposte is that, even if the letter of former Application Note 3 does not compel a concurrent or partially concurrent sentence, the district court should have honored the Note's spirit by running nine months of the federal sentence concurrent with the undischarged portion of the appellant's state incarceration. We agree that this would have been within the district court's discretion—but it is quite another thing to say that the court was obliged to shape the federal sentence in that way. The predominant objective of USSG § 5G1.3(c) is "to achieve a reasonable incremental punishment for the [offense of conviction]." Under the appellant's approach, the district court would be forced to ignore a wide array of state offenses for which the appellant received little reproof and, in the bargain, to extend leniency based on a state sentence that already had absorbed the sting of numerous other state sentences. On these facts, we cannot second-guess the district court's seemingly wise determination that a partially concurrent federal sentence would not achieve a reasonable incremental punishment for the offense of conviction.

*United States v. Whiting,* 28 F.3d 1296 (1st Cir.1994), much relied on by the appellant, does not compel a different result. In *Whiting,* we ruled that the district court erred in imposing a wholly consecutive federal sentence on a defendant, Bartlett, without attempting to compute the punishment called for by former Application Note 3. *See id.* at 1310–11. There are four significant distinctions between *Whiting* and the case at bar. First, the offenses on which Bartlett's state sentence was based had federal analogues, thus permitting simulation of federal grouping practices. *See id.* at 1310–11. Second, *Whiting* did not involve either prior state sentences imposed for probation violations or an amalgam of overlapping state sentences. *See id.* Third, the appeal in *Whiting* arose in response to the district court's mistaken belief that section 5G1.3 required either wholly concurrent or consecutive sentencing, rather than permitting partially concurrent

or consecutive sentences where appropriate. *See id.* Finally, *Whiting* dealt with the 1991 version of USSG § 5G1.3, and that version was amended in 1992 in a way that weakens the appellant's reliance on it. *See United States v. Redman,* 35 F.3d 437, 439–42 (9th Cir.1994) (discussing this revision).

We need go no further. Refined to bare essence, the guidelines call for the district court, when USSG § 5G1.3 applies, to impose a sentence that will result in a "reasonable incremental punishment." Viewed in a practical, commonsense light, pairing the appellant's federal sentence with the undischarged portion of his state sentences would not accomplish this result. Because so many of Florence's multiple state sentences ran concurrently, sentencing him on the federal firearms charges to yet another concurrent term effectively would have obliterated any penalty for those offenses. By contrast, stringing the federal sentence consecutively to the undischarged portion of the state sentences effected what is plainly, in these circumstances, a reasonable incremental punishment. *See McCarthy,* 77 F.3d at 539.

***Affirmed.***

APPENDIX

| CHARGE | DATE OF DISPOSITION | COURT | SENTENCE | APPROXIMATE EXPIRATION OF SENTENCE* |
|---|---|---|---|---|
| possession of heroin with intent to distribute | April 17, 1996 | Roxbury Dist. Ct. | 2 years [State Sentence No. 1] | April 17, 1998 |
| probation violations (2) (underlying offenses drugs) | April 17, 1996 | Roxbury Dist. Ct. | one year on each (concurrent) | April 17, 1997 |
| possession of cocaine | May 20, 1996 | Hingham Dist. Ct. | six months (concurrent) | November 20, 1996 |
| probation violations (3) (underlying offenses: vehicular) | May 21, 1996 | Quincy Dist. Ct. | one year on each (concurrent) | May 21, 1997 |
| probation violation (underlying offense: drugs) | May 21, 1996 | Quincy Dist. Ct. | one year "from and after" [State Sentence No. 2] | April 17, 1999 |
| possession of heroin and marijuana with intent to distribute (2 charges) | June 25, 1996 | Boston Mun. Ct. | nine months on each (concurrent) | March 25, 1997 |
| possession of cocaine | August 2, 1996 | Plymouth Dist. Ct. | six months (concurrent) | February 2, 1997 |

*Calculations are before good-time credits, etc., if any.