UNITED STATES of America, Appellee,

v.

Assenati VIERA, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Sebastiao DE SOUZA, Defendant, Appellant.

Nos. 98–1027, 98–1028.

United States Court of Appeals,
First Circuit.

Submitted June 8, 1998.

Decided June 25, 1998.

Arnold P. Cohen, on brief for appellants.

Donald K. Stern, U.S. Attorney, and Nadine Pellegrini, Assistant U.S. Attorney, on brief for appellee.

Before Selya, *Circuit Judge,* Campbell, *Senior Circuit Judge,* and Lynch, *Circuit Judge.*

*Per Curiam.*

Assenati Viera and Sebastiao de Souza appeal from sentences imposed following guilty pleas to six counts related to a conspiracy to produce and sell false Social Security and "green" cards.[1] They admitted to completing the cards with photographs, seals, numbers, names and signatures, and to selling them. Their sole argument on appeal is that the district court erred in increasing their base offense level by six levels under U.S.S.G. § 2L2.1(b)(2)(C) (1995).[2] That increase was based on a finding that the offenses to which they pled guilty "involved" one hundred or more documents, within the meaning of the guidelines. Defendants maintain that the evidence did not support a finding that one hundred or more counterfeit documents were actually produced during the conspiracy. But "involved" does not mean "produced." Nor are the standards of what needs to be proved for conviction the same as those which may be considered for sentencing. We affirm.

■ Section 2L2.1 of the Guidelines is titled in relevant part: "Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status." It provides in relevant part:

(2) If the offense involved six or more documents or passports, increase as follows:

| | Number of Documents/Passports | Increase in Level |
|---|---|---|
| (A) | 6–24 | add 2 |
| (B) | 25–99 | add 4 |
| (C) | 100 or more | add 6. |

U.S.S.G. § 2L2.1(b)(2) (1995).[3] Defendants argue that federal agents obtained only six or seven completed counterfeit documents during their investigation, and that only a two level increase should have been imposed. We reject the notion that the term "involved" refers only to completed documents. Rather, applying a more ordinary definition, we read

---

1. Defendants pled guilty to violating 18 U.S.C. §§ 371, 1028(a)(5), 1546(a) and 42 U.S.C. § 408(a)(7)(C).

2. Sentencing generally proceeds according to the version of the Guidelines effective on that date. *See United States v. Florence,* 143 F.3d 11, 12–13 (1st Cir.1998). Here, defendants were sentenced on December 10, 1997. However, the penalties under § 2L2.1 were increased effective May 1, 1997, *see United States Sentencing Commission Guidelines Manual* app. C, amendment 544, and defendants were arrested prior to that time, on April 16, 1997. In this situation, in deference to ex post facto concerns, the sentencing court applies the version of the guidelines that obtained when the defendant committed the crime. *See Florence,* 143 F.3d at 12–13. Here, the sentencing court correctly applied the version of § 2L2.1

made effective in 1995 and still current in April 1997.

3. This provision of the Sentencing Guidelines, as applied to the defendants, imposes a base offense level ("BOL") of nine. Viera and De Souza each received a two level reduction for acceptance of responsibility. De Souza received an additional two level reduction for being a minor participant in the conspiracy. The district court then increased each defendant's BOL by six, resulting in a BOL of eleven for De Souza and thirteen for Viera.

Based on these BOLs, the district court sentenced De Souza to four months of incarceration and six months of home detention, followed by two years of probation. The court sentenced Viera to twelve months and a day of incarceration, followed by two years of probation.

"involved" as referring to items "draw[n] in," "implicated" or "entangled." *Webster's Third New International Dictionary* 1993 at 1191.

Here, there was evidence that defendants had produced and trafficked, or intended to produce and traffic, hundreds of counterfeit documents. Analysis of typewriter ribbons seized from defendants' apartment showed the imprint of over 400 names and Social Security numbers. In addition, over 600 blank Social Security cards were seized from a third co-conspirator's apartment. The district court properly considered this evidence in its determination of how many documents were "involved" in defendants' counterfeiting scheme. *See United States v. Salazar*, 70 F.3d 351, 352 (5th Cir.1995) (blank documents with which defendant intended to make forgeries were "involved" in crime for sentencing purposes under U.S.S.G. § 2L2.1(b)(2)).[4] Like the Fifth Circuit, for sentencing purposes, "[w]e see no reason to distinguish between completed and uncompleted documents," *Salazar*, 70 F.3d at 352, when determining whether documents are "involved" in a crime.

At sentencing, the government need only prove facts by a preponderance of the evidence. *See United States v. Jackson*, 3 F.3d 506, 509 (1st Cir.1993). This court will set aside a factual finding of the district court only for clear error. *Id.* at 508. Given the evidence, it was not clear error for the district court to find that the offenses to which defendants pled guilty more likely than not "involved" 100 or more documents under U.S.S.G. § 2L2.1(b)(2).

Each defendant's sentence is *affirmed.*

**4.** Contrary to defendants' assertion, *United States v. Gomes*, 969 F.2d 1290 (1st Cir.1992), sheds no light on the question: it holds only that possession of blank Social Security cards, without more, is insufficient to support a *conviction* for knowing *possession* of counterfeit Social Security cards.