<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-2339

                         UNITED STATES,

                           Appellee,

                               v.

                       MIGUEL CARABALLO,

                     Defendant, Appellant.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF NEW HAMPSHIRE

      [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

                             Before

                     Stahl, Circuit Judge,
            John R. Gibson,* Senior Circuit Judge,
                  and Lynch, Circuit Judge.
                                
                                
                                
                                
    Jonathan R. Saxe, with whom Twomey & Sisti Law Offices was on
brief, for appellant.
    Jean B. Weld, Assistant United States Attorney, with whom Paul
M. Gagnon, United States Attorney, was on brief, for appellee.

December 29, 1999

                                
                                
_____________________
*of the Eighth Circuit, sitting by designation.

 STAHL, Circuit Judge.  Defendant-appellant Miguel
Caraballo appeals the sentence imposed following his conviction for
conspiracy to commit interstate transportation of stolen property
in violation of 18 U.S.C.  371.  The issue on appeal is the
district court's conclusion that a portion of Caraballo's sentence
should run consecutively to a state sentence he was already serving
for conduct related to the federal offense.  Caraballo argues that
the relationship between the conduct underlying the two offenses
requires wholly concurrent sentencing under section 5G1.3 of the
United States Sentencing Guidelines.  We disagree, and therefore
affirm.
                              I.
A.  Legal Context
 The Sentencing Guidelines (the "Guidelines") prescribe
a range of months appropriate for each federal offender's sentence.  
The recommended range takes into account the "offense level" for
the violation being punished (the "instant offense") and the
defendant's "criminal history category."  U.S.S.G.  5A.  The
"offense level" consists of a "base offense level" corresponding to
the crime for which the defendant has been convicted, as modified
by mandatory "adjustments" which take account of certain
aggravating or mitigating factors.  In determining the applicable
offense level, district courts must consider (and must only
consider) conduct that is "relevant" pursuant to U.S.S.G.  1B1.3.  
 Section 5G1.3 of the Guidelines addresses cases in which
the defendant, at sentencing, is already serving a term of
imprisonment.  Subsection 5G1.3(b) requires that when the
undischarged term "resulted from offense(s) that have been fully
taken into account in the determination of the offense level for
the instant offense," the new sentence must run concurrently with,
rather than consecutively to, the undischarged term.  U.S.S.G.
5G1.3(b).  Where the prior offenses have not been "fully taken
into account in the determination of the offense level for the
instant offense," however,  5G1.3(c) allows the sentence for the
instant offense to "be imposed to run concurrently, partially
concurrently, or consecutively to the prior undischarged term . . .
to achieve a reasonable punishment for the instant offense."  Id.
5G1.3(c).
 At issue is whether conduct that is "relevant" under
1B1.3 must necessarily be deemed to have been "fully taken into
account in the determination of the offense level for the instant
offense," irrespective of whether or not that conduct in fact
altered the sentencing range for the offense.  We find that it need
not, and that here, where "relevant" conduct has not resulted in
any change in the defendant's offense level -- or even in his
criminal history category -- the district court appropriately
eschewed  5G1.3(b) in favor of  5G1.3(c)'s discretionary
approach.
B.  Factual Background
 Between 1993 and 1996, Caraballo and several confederates
committed numerous burglaries throughout New England.  Though not
all of the conspirators participated in each burglary, the group's
members assisted one another in various ways, engaging in joint
research, planning, and execution of the heists.   
 On November 8, 1995, Caraballo and two partners, Valdir
Alvarenga and Nelson Rivera, attempted to burgle Bernie's Appliance
Store in Manchester, Connecticut ("Bernie's").  Connecticut police
officers had learned of the plan prior to the attack, however, and
were lying in wait inside and outside of Bernie's.  Upon noticing
the officers' presence, Rivera fled the store.  During Caraballo's
plea colloquy, the district court described the ensuing events, to
which Caraballo admitted, thusly:
   [T]here was a confrontation between officers
 and Alvarenga and Caraballo inside the store.  
 Caraballo, [who] was armed with a pair of
 long-handled cutting shears, . . . moved
 towards one of the officers in . . . an
 offensive attack position.  At that point the
 police holstered their weapons.   
     Alvarenga noticed that the officers
 were focused on Caraballo and moved into a
 position to attack one of the officers.   
     The police then observed Alvarenga,
 armed with an ax, approaching and instructed
 him to drop the weapon, which he refused to
 do. . . . [T]he officer was forced to shoot,
 and . . . Alvarenga . . . was mortally
 wounded.
  
Caraballo then fled the premises, entered a vehicle outside and
began to drive away.  Before Caraballo could effectuate his escape,
a police officer squeezed his torso through the passenger-side
window and ordered him to stop.  When Caraballo continued driving,
the officer shot him in the leg.  Caraballo accelerated, throwing
the officer to the ground, and then attempted to run over another
officer.  Shortly thereafter he was involved in an accident, which
led to his apprehension and arrest.  No property was taken from
Bernie's.
 Caraballo was prosecuted in Connecticut's Superior Court
on charges stemming from the Bernie's burglary.  Although the
record is not entirely clear, it appears that he pleaded guilty to
burglary and assault on an officer.  In any event, on June 28,
1996, the court sentenced Caraballo to an eight-year prison term
for the former and a concurrent prison term for the latter.
 Caraballo also faced federal charges in the District of
New Hampshire, where he was indicted for conspiracy to commit
interstate transportation of stolen property in violation of 18
U.S.C.  371.  Twenty-two burglaries were listed as overt acts in
furtherance of the conspiracy.  One of the listed acts was his
"unlawful[] ent[ry into] a business operated as Bernie's Store,
Manchester, Connecticut."  Caraballo pleaded guilty to the
conspiracy charge.
 Caraballo's Presentence Report ("PSR") recommended that
he be held accountable for four burglaries resulting, collectively,
in losses of $265,334.00.  The PSR also recommended that Caraballo
be held accountable for five other burglaries, resulting in either
indeterminate loss or, as in the attempted Bernie's robbery, no
loss at all.  The PSR proposed a base offense level of sixteen (16)
under U.S.S.G.  2X1.1 and 2B1.1(b)(1)(K).  This calculation
included fourteen (14) levels to reflect the loss of $265,334.00
plus two (2) additional levels because the burglaries involved
"more than minimal planning."  U.S.S.G.  2B1.1(b)(4)(A).  The PSR
then recommended an additional two (2) levels for reckless
endangerment during flight (stemming from Caraballo's escape from
Bernie's), see U.S.S.G.  3C1.2, and two levels for obstruction of
justice (stemming from an aborted plot to kill potential adverse
witnesses), see U.S.S.G.  3C1.1.  The report subtracted three (3)
levels for Caraballo's acceptance of responsibility, resulting in
an adjusted offense level of seventeen (17).  See U.S.S.G.  3E1.1.  
Caraballo's criminal history category, which did not take into
account any aspect of the Bernie's incident, was five (5).  
Caraballo's adjusted offense level and criminal history category
together resulted in a sentencing range of forty-six to fifty-seven
months.  See U.S.S.G.  5A.  The PSR concluded that Caraballo's
sentence could be imposed to run concurrently with, partially
concurrently with, or consecutively to the prior undischarged term
of imprisonment relating to his Connecticut conviction.
 Caraballo argued for a wholly concurrent sentence
pursuant to U.S.S.G.  5G1.3(b).  He contended that because he
received a two-level upward adjustment in his total offense level
for reckless endangerment relating to his escape from Bernie's,
that burglary -- for which he was then serving his Connecticut
sentence -- had been "fully taken into account" for the purpose of
establishing his offense level.   
 The government requested wholly consecutive sentencing
pursuant to U.S.S.G.  5G1.3(c).  The prosecution observed that no
upward adjustment had been assigned for the Bernie's incident
itself.  Indeed, because no merchandise was stolen from the store,
no upward adjustment could have been assigned.  Moreover, the
Bernie's incident had not been relied upon in setting Caraballo's
criminal history category.  For these reasons, the government
argued that the crimes for which Caraballo was serving time in
Connecticut were not "fully" taken into account, as required in
order for  5G1.3(b) to take effect, and that his sentence should
run consecutively to the undischarged Connecticut term.   
 On November 18, 1998, the district court sentenced
Caraballo.  The court ruled that the Bernie's incident had not been
"fully taken into account" in the offense level determination.  The
court reasoned as follows:  "First of all . . . there were a number
of . . . obviously criminal offenses[] that occurred there, all of
which were not charged . . . [and for some of which] the defendant
does not stand convicted and sentenced."  Moreover, "[t]here was no
dollar loss from the Bernie's burglary, and therefore, [there has]
been no adjustment to the defendant's overall offense level under
[U.S.S.G. ] 2B1.1 . . . .  While reckless endangerment has taken
some of these . . . offenses into account, . . . it certainly
hasn't taken all of what went on that evening . . . into account
fully."  Thus, the court determined that the sentence was governed
by U.S.S.G.  5G1.3(c), not  5G1.3(b).  Caraballo received a
fifty-seven (57) month sentence, only nine months of which were to
run concurrently with his undischarged Connecticut sentence.  
 Caraballo now challenges the district court's decision to
impose only nine months of the 57-month sentence on a concurrent
basis.  He does not challenge the district court's particular
division of concurrent and consecutive time under  5G1.3(c), but
only the court's decision to apply that subsection rather than
5G1.3(b).
                             II.
A.  Standard of Review
 In reviewing a district court's application of a
sentencing guideline, we utilize a bifurcated process.  "First, we
review the guideline's legal meaning and scope de novo.  Next, we
review the court's factfinding for clear error, giving due
deference to the court's application of the guidelines to the
facts."  United States v. Thompson, 32 F.3d 1, 4 (1st Cir. 1994)
(internal citations omitted); see also United States v. Florence,
143 F.3d 11, 12 (1st Cir. 1998).
 Unlike many  5G1.3 controversies, this appeal requires
a purely legal determination, and thus calls for de novo review.  
Disputes involving  5G1.3 have almost invariably turned on whether
or not the prior undischarged term rested on a conviction for
conduct that was "relevant" to the instant offense.  Typically, as
in many of the cases cited by the parties, the central issue has
been whether the conduct was "relevant" by virtue of having
constituted "part of a common scheme or plan."  That inquiry,
governed by U.S.S.G.  1B1.3, requires a factual determination as
to whether the two violations were "substantially connected" by
common victims, purposes, modus operandi, or accomplices.  See,
e.g., United States v. Joost, 133 F.3d 125, 132 (1st Cir. 1998);
United States v. Sheahan, 31 F.3d 595, 599 (8th Cir. 1994); United
States v. McCaskey, 9 F.3d 368, 375-76 (5th Cir. 1993); United
States v. Shewmaker, 936 F.2d 1124, 1129 (10th Cir. 1991).  Such a
factual determination merits review only for clear error.
 This appeal, however, is atypical.  Caraballo was
convicted and sentenced in Connecticut for the burglary at Bernie's
and for his assault upon an officer during his escape from
Bernie's.  He does not dispute the district court's factual finding
that the burglary and the assault constitute  1B1.3 "relevant
conduct" for the purposes of sentencing the instant offense.  
Rather, he raises a purely legal question: Amidst undisputed
factual findings and conduct that is all admittedly "relevant," how
are courts to interpret U.S.S.G.  5G1.3(b)'s term "fully taken
into account"?  When interpreting a Guideline, "we cede no
deference to the district court's legal conclusion."  United States
v. St. Cyr, 977 F.2d 698, 701 (1st Cir. 1992).  Our review,
therefore, is de novo.
B.  Interpreting  5G1.3
 Caraballo contends that, as "relevant conduct," the
offenses underlying his Connecticut sentence were necessarily, as
a matter of law, "fully taken into account in the determination of
the offense level for the instant offense," irrespective of whether
that conduct influenced the offense level.  We disagree.
 1.      
 Caraballo's argument rests on the contention that
5G1.3's reference to conduct "fully taken into account" denotes
all  1B1.3 "relevant conduct."  Because all relevant conduct is
necessarily "taken into account in the determination of the offense
level for [an] instant offense," Caraballo's construction would
require us to treat  5G1.3(b)'s term "fully" as surplusage which
does not at all modify the phrase "taken into account."  This we
may not do.
 Any conduct that is "relevant" to the instant offense
under  1B1.3 must be "taken into account in the determination of
the offense level for the instant offense."  Section 1B1.3 uses
mandatory language:  The instant offense's base offense level,
specific offense characteristics, and adjustments all "shall be
determined on the basis of" the conduct  1B1.3 defines as
relevant.  U.S.S.G.  1B1.3(a) (emphasis added).  Under the
Guidelines, then, relevant conduct must be "taken into account" by
the sentencing judge.  Moreover, no other conduct -- no irrelevant
conduct -- may be considered.  See id.  In a case such as
Caraballo's, where the conduct in which the undischarged term is
grounded is concededly "relevant" to the instant offense, that
conduct, and only that conduct, is necessarily "taken into account"
for the purposes of establishing an appropriate sentence.  
 If all conduct that is "taken into account" is
necessarily "relevant" under  1B1.3, then any interpretation
positing that relevance is all that is demanded by  5G1.3(b)'s use
of the phrase "fully taken into account" would render meaningless
the word "fully."  We are prohibited from adopting any such
construction, for it is axiomatic that  
   "[a]ll words and provisions of statutes are
 intended to have meaning and are to be given
 effect, and no construction should be adopted
 which would render statutory words or phrases
 meaningless, redundant or superfluous."  We
 think that this principle is fully applicable
 to the sentencing guidelines, which, although
 they are not statutes, are to be construed in
 much the same fashion.
United States v. DeLuca, 17 F.3d 6, 10 (1st Cir. 1994) (quoting
Lamore v. Ives, 977 F.2d 713, 716-17 (1st Cir. 1992)) (internal
citations omitted); see also South Carolina v. Catawba Indian
Tribe, Inc., 476 U.S. 498, 510 n.22 (1985) (emphasizing the
"elementary canon of construction that a statute should be
interpreted so as not to render one part inoperative"); Colautti v.
Franklin, 439 U.S. 379, 392 (1979) (same); Lopez-Soto v. Hawayek,
175 F.3d 170, 173 (1st Cir. 1999) (same).  "Fully" cannot, then, be
rendered meaningless, and the term "fully taken into account," in
turn, cannot be read to be synonymous with the term "relevant
conduct" as defined in  1B1.3.  
 2.
 While the Guidelines' structure requires that
5G1.3(b)'s "fully" must mean something, and that not all
"relevant conduct" is necessarily "fully taken into account in the
determination of the offense level for the instant offense,"
precisely what "fully" means -- and precisely which subset of
"relevant conduct" is specified by that term -- requires
consideration.  As described below,  5G1.3's central aim is to
ensure that no defendant is punished twice for the same crime,
while preserving the district courts' discretion where only certain
elements of the crime punished in one proceeding also impact crimes
punished in another.  Where, as here, (1) the $0 loss from the
Bernie's burglary resulted in no change in Caraballo's offense
level, and could not have so resulted, (2) the Bernie's burglary
did not impact Caraballo's criminal history category, and (3)
Carballo's federal conspiracy conviction was grounded in eight
other burglaries in addition to the Bernie's heist, the district
court properly concluded that the state offense was not "fully
taken into account in the determination of the offense level for
[Caraballo's] instant [federal] offense."  In these circumstances,
a partially consecutive sentence will not result in duplicative
punishment.
 "[S]tatutory construction begins with the actual language
of the provision."  United States v. Rivera, 131 F.3d 222, 224 (1st
Cir. 1997); see also Landreth Timber Co. v. Landreth, 471 U.S. 681,
685 (1985); United States v. Thompson, 32 F.3d 1, 5 (1st Cir.
1994).  However, where a provision uses terminology with no clear
meaning, courts must interpret such language with reference to the
manifest statutory purpose.  "The chief objective of statutory
interpretation is to give effect to the legislative will."  
Passamaquoddy Tribe v. Maine, 75 F.3d 784, 788 (1st Cir. 1996); see
also Negonsott v. Samuels, 507 U.S. 99, 104 (1993) ("'Our task [in
interpreting statutes] is to give effect to the will of Congress.'"
(quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570
(1982))); Evans v. Commissioner, 933 F.2d 1, 6 (1st Cir. 1991)
(consulting statute's "basic purpose" after finding text
susceptible to multiple interpretations).
 Subsection 5G1.3(b)'s phrase "fully taken into account"
is left undefined.  We thus strive to interpret it in a manner
consistent with  1B1.3's definition of "relevant conduct" and the
principles outlined above.  Conduct "taken into account" must
include all "relevant conduct" under  1B1.3, but neither
5G1.3(b) itself nor the accompanying notes elaborate which
particular subset of "relevant conduct" is signified by the word
"fully."  Thus, in interpreting  5G1.3, we must attempt to
construe the provision in the manner that best effects its intended
purpose.  See United States v. DeLuca, 17 F.3d 6, 10 (1st Cir.
1994) (noting that the tools of statutory construction apply to the
Guidelines).
 In Witte v. United States, 515 U.S. 389 (1995), the
Supreme Court had occasion to consider the purpose behind  5G1.3.  
A majority of the Court found that the section was designed "to
mitigate the possibility that the fortuity of two separate
prosecutions will grossly increase a defendant's sentence."  Id. at
405.  Where a defendant's related crimes "are not prosecuted in the
same proceeding . . .  5G1.3 . . . attempts to achieve some
coordination of sentences . . . with an eye toward having such
punishments approximate the total penalty that would have been
imposed had the sentences . . . been imposed at the same time
(i.e., had all the offenses been prosecuted in a single
proceeding)."  Id. at 404-05.  We have embraced this interpretation
of the purpose animating  5G1.3, see United States v. Joost, 133
F.3d 125, 132 (1st Cir. 1998) (stating that section's "core
purpose" is "to address the unfairness that would result from
receiving a second sentence for activities that were considered as
relevant conduct in a prior proceeding" (quoting United States v.
Kimble, 107 F.3d 712, 714 (9th Cir. 1997))), as have several other
courts of appeals, see, e.g., United States v. Dorsey, 166 F.3d
558, 562 (3d Cir. 1999); United States v. Fuentes, 107 F.3d 1515,
1523 (11th Cir. 1997); Prewitt v. United States, 83 F.3d 812, 817
(7th Cir. 1996).
 It is thus widely acknowledged that  5G1.3 is directed
at the prevention of duplicative sentencing for any particular
conduct.  Only one interpretation would conform  5G1.3(b)'s "fully
taken into account" language to this purpose:  Whereas all  1B1.3
"relevant conduct" must be "taken into account in the determination
of the offense level for the instant offense," only relevant
conduct that has resulted in -- or that could have resulted in --
a change in the instant offense's "offense level" is "fully taken
into account" under  5G1.3(b).  That is, only when the defendant's
undischarged term of imprisonment "resulted from offense(s) that"
not only were "relevant conduct" vs-a-vs the instant offense, but
also impacted (or could have impacted) the defendant's offense
level or criminal history category, is the district judge bound to
choose concurrent sentencing.  Otherwise, the judge is free to
impose a concurrent, partially concurrent, or consecutive sentence
under  5G1.3(c).  This framework ensures that offenders will not
be sentenced doubly for any given criminal act.  However, it also
preserves the district court's authority to impose appropriate
punishment when some aspects of the offender's conduct are
punishable in one jurisdiction and other aspects are punishable in
another.  
 3.
 Finally, where the defendant's "instant offense" actually
incorporates multiple offenses, only some (or one) of which, if
sentenced alone, would merit concurrent sentencing under
5G1.3(b), that subsection's purpose is best served by a rule
allowing sentencing of the combined "instant offense" pursuant to
5G1.3(c).  We concur with the Court of Appeals for the Ninth
Circuit, which has held:
   A rule requiring application of  5G1.3(b)
 where only some of the offenses for which the
 defendant is serving the undischarged prison
 term were taken into account would require
 concurrent sentences in situations where
  5G1.3(b)'s rationale would not fully apply.  
 On the other hand, rejection of  5G1.3(b) in
 such multiple-offenses situations would leave
 the court free fully to consider, under
  5G1.3(c), all of the potential permutations
 and complexities that arise in a multiple-
 offenses context.

United States v. Kimble, 107 F.3d 712, 715 (9th Cir. 1997).

 For example, we see no reason why a defendant already
serving an undischarged term for multiple offenses, only one of
which was "fully taken into account" in determining the instant
offense's offense level, should merit a wholly concurrent sentence.  
Such an outcome would not serve the purpose animating  5G1.3(b)
because the instant offense might well involve violations wholly
unrelated to the conduct underlying the undischarged term.  In such
a case, each prison term would include time for offenses that were
not at all accounted for by the other term; mandatory concurrent
sentencing would be inappropriate.  See, e.g., United States v.
Myers, 66 F.3d 1364, 1376 (4th Cir. 1995) (allowing consecutive
sentencing under  5G1.3(c) where defendants were already serving
undischarged term for rape and instant offense level included
adjustments for assault and physical injury to the victim, because
"there are obvious components of rape that [were] not entirely
encompassed by findings of assault and physical injury").
 In multiple-offenses cases of this sort, then, district
courts are free, under  5G1.3(c), to choose wholly concurrent,
partially concurrent, or wholly consecutive sentencing.  The
courts' discretion is cabined, though, by that subsection's
requirement that the sentence be designed "to achieve a reasonable
punishment for the instant offense."  U.S.S.G.  5G1.3(c).  Thus,
for example, when some, but not all, of the conduct from which the
underlying term resulted is "fully taken into account" in
determining the offense level for the instant offense, it would be
appropriate for the sentencing judge to run that portion of the
sentence corresponding to such conduct concurrently with the
underlying term.  That decision, though, would be governed by
5G1.3(c), not  5G1.3(b).
   4.
 In summary, when a defendant is serving an undischarged
term for conduct all of which has influenced the final "offense
level" applicable to the instant offense, the entire sentence for
that instant offense must run concurrently with the undischarged
term, pursuant to  5B1.3(b).  When none of the conduct related to
the undischarged term influences the instant offense's offense
level, the district court is free to impose a wholly concurrent,
partially concurrent, or wholly consecutive sentence, in accordance
with  5G1.3(c).  When some of the conduct underlying an
undischarged term impacted the offense level, but other aspects of
that conduct did not, the sentencing judge again enjoys discretion
under  5G1.3(c), but must remain mindful of that subsection's
directive that the combined punishment be "reasonable," and of the
overarching purpose of  5G1.3 -- namely, the prevention of
duplicative punishment.
                             III.
 In view of the  5G1.3 mechanism, as we here interpret
it, Caraballo's sentence must be affirmed.  Though Caraballo's
federal sentence and his Connecticut sentence both punished his
attack upon the police officer outside Bernie's, each also
addressed conduct that was not taken into account by the other
sentence.  Specifically, the federal term (and only the federal
term) punished the conspiracy with respect to all the burglaries
resulting in losses, as well as Caraballo's aborted plot to murder
adverse witnesses, while the Connecticut term (and only the
Connecticut term) addressed the failed Bernie's heist.  Because the
federal term was not at all impacted by the Bernie's heist, as the
result either of a changed offense level or an increased criminal
history category, and because that term addressed crimes other than
those addressed by the Connecticut sentence, we are confident that
the Bernie's burglary falls into the category of conduct that was
not "fully taken into account" for  5G1.3(b) purposes.  In
contrast, because Caraballo's assault upon the Connecticut police
officer, for which he was sentenced in Connecticut, also resulted
in a two-level upward adjustment to his instant offense level, that
conduct likely was "fully taken into account."
 In this case, then, the district court properly applied
5G1.3(c), which allows any combination of concurrent and
consecutive sentencing.  Connecticut law permitted enhanced
punishment for Caraballo's attempt to rob Bernie's; federal law did
not.  No duplicative punishment for the burglary was ever
threatened.  Caraballo was only forced to bear the full brunt of
all conduct deemed illegal by the relevant sovereign.  To permit
consecutive sentencing in such circumstances is merely to preserve
the district court's discretion to ensure just punishment for all
criminal conduct.
 The district court appropriately addressed the risk of
punishing Caraballo doubly for his attack upon the Connecticut
police officer by exercising its discretion under  5G1.3(c) to run
part -- specifically, nine months -- of Caraballo's federal
sentence concurrently with his Connecticut sentence.  Caraballo
does not challenge, and we do not address, the district court's
application of its discretion under  5G1.3(c).   
 In short, because not all of the conduct from which
Caraballo's Connecticut term resulted influenced his ultimate
offense level, not all of it was "fully taken into account" under
5G1.3(b).  The court below thus correctly chose to apply
5G1.3(c) instead.   
 Affirmed.

</body>

</html>