**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ruben CASTELLANOS, Defendant–Appellant.**

**No. 98–2628.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1998.

Decided Jan. 21, 1999.

Brian W. Ellis (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Richard T. Sikes, Sr. (argued), Chicago, IL, for Defendant–Appellant.

Before BAUER, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Ruben Castellanos pleaded guilty to conspiracy to traffic in illegal documents relating to naturalization, citizenship or legal resident status. However, he now appeals the district court's calculation of the number of documents attributable to him under § 2L2.1 of the United States Sentencing Guidelines ("U.S.S.G."). For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

Ruben Castellanos conspired and worked together with two other men to produce and sell counterfeit identification documents. Before August 27, 1997, he rented a room from which he planned to produce the documents. Then, for two weeks, from August 27 until September 10, 1997, the co-conspirators solicited customers to buy the identification documents. Mr. Castellanos turned blank counterfeit resident alien cards and Social Security cards into actual counterfeit identification cards by typing biographical information onto the cards and laminating them. He received $50.00 per counterfeit document from the customers. On September 10, 1997, when Mr. Castellanos was arrested, he was carrying a large duffle bag which contained, according to the government's count, 192 counterfeit resident alien cards, 24 counterfeit Social Security cards, 16 plastic laminates with the I–551 hologram for resident alien cards, and 31 clear plastic laminates for Social Security cards.

Mr. Castellanos was charged in two counts with conspiring to traffic in documents relating to naturalization, citizenship or legal resident status (in violation of 18 U.S.C. § 371), and knowingly possessing a document-making implement with the intent to produce false identification documents (in violation of 18 U.S.C. § 1028(a)(5)). He pleaded guilty to the conspiracy count. At the sentencing hearing on June 16, 1998, the court and parties agreed that U.S.S.G. § 2L2.1(a) applied to the offense. That guideline provides that the base offense level for trafficking in illegal identification documents is 11 and, if the offense involved 100 or more documents, the offense level is increased by 9.[1] The

---

1. In pertinent part, U.S.S.G. § 2L2.1 provides:
   § 2L2.1.  *Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status, or a United States Passport;  False Statement* *in Respect to the Citizenship or Immigration Status of Another;  Fraudulent Marriage to Assist Alien to Evade Immigration Law*
   (a)  Base Offense Level: 11

district court, after examining the physical evidence and hearing the argument of counsel, determined that each card Mr. Castellanos was carrying in the duffle bag when he was arrested, whether complete or incomplete, was a document. The court counted 192 counterfeit resident alien cards and 24 counterfeit Social Security cards, for a total of 216 documents. It then assigned a 9–level increase for more than 100 documents and a 3–level decrease for acceptance of responsibility. The court sentenced Mr. Castellanos to the lowest end of the sentencing range of 24–30 months, 24 months.

## II

## DISCUSSION

■ Section 1028 of the "Fraud and False Statements" chapter of the United States Code describes the offense of fraud in connection with identification documents.[2] The statute defines the term "identification document" as

> a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political sub-

(b) Specific Offense Characteristics
. . .
(2) If the offense involved six or more documents or passports, increase as follows:

| Number of Documents/Passports | Increase in Level |
|---|---|
| (A) 6–24 | add 3 |
| (B) 25–99 | add 6 |
| (C) 100 or more | add 9 |

**2.** In pertinent part, the statute 18 U.S.C. § 1028 provides:
§ 1028(a). Whoever . . .
(1) knowingly and without lawful authority produces an identification document or a false identification document;
(2) knowingly transfers an identification document or a false identification document knowing that such document was stolen or produced without lawful authority;
(3) knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor) or false identification documents;
(4) knowingly possesses an identification document (other than one issued lawfully for the use of the possessor) or a false identification document, with the intent such document be used to defraud the United States;

division of a foreign government, an international governmental or an international quasi-governmental organization which, *when completed with information concerning a particular individual*, is of a type intended or commonly accepted for the purpose of identification of individuals.

18 U.S.C. § 1028(d)(1) (emphasis added). The district court concluded that all 216 cards held by Mr. Castellanos qualified as "identification documents" under the statutory definition. It then employed the sentencing calculation provisions under sec. 2L2.1, the guideline that applies to the offense of trafficking in illegal documents. We conduct a de novo review of the district court's application of a guideline, but defer to its findings of fact unless they are clearly erroneous.[3]

### A.

■ Mr. Castellanos, focusing on the definition of "identification document," contends first that the blank papers he possessed at the time of his arrest cannot be "documents" as that term is defined in § 1028(d)(1) because the cards had not been "completed" as the definition requires. Those papers, he asserts, were *not yet docu-*

(5) knowingly produces, transfers, or possesses a document-making implement with the intent such document-making implement will be used in the production of a false identification document or another document-making implement which will be so used; or
(6) knowingly possesses an identification document that is or appears to be an identification document of the United States which is stolen or produced without lawful authority knowing that such document was stolen or produced without such authority;
or attempts to do so, shall be punished as provided in subsection (b) of this section.

**3.** *See United States v. Gibson*, 155 F.3d 844, 846 (7th Cir.1998) (distinguishing between de novo review of legal interpretation of a guideline and clear error review of application of guideline to particular circumstances); *United States v. McEntire*, 153 F.3d 424, 431 (7th Cir.1998) (citing 18 U.S.C. § 3742(e), the statute mandating a deferential standard of review of factual findings); *United States v. Jackson*, 95 F.3d 500, 505 (7th Cir.) (reviewing de novo definition of guideline term "loss" and reviewing factual finding of amount of loss for clear error), *cert. denied*, —— U.S. ——, 117 S.Ct. 532, 136 L.Ed.2d 417 (1996).

ments because they merely contained impressions of inchoate cards. Even though Mr. Castellanos admitted that he intended to use the blank impressions to produce counterfeit identification documents, they were not yet processed documents for trafficking, he submits, and therefore could not be counted to enhance his sentence under § 2L2.1.

We cannot accept Mr. Castellanos' submission. As a threshold matter, we note that Mr. Castellanos pleaded guilty to conspiring to violate 18 U.S.C. § 1028 by trafficking in illegal identification documents. His conviction is not predicated, therefore, on his completion of the offense of trafficking in illegal documents. Moreover, we believe that the plain language of § 1028(d) does not support the contention that the statute is applicable only to completed documents. The statutory language describes an "identification document" as a document made by a governmental authority for the purpose of identification of individuals; when the specific identifying information of an individual is added to the document, it then is intended and accepted for the identification of a particular individual. Notably, the "when" clause is not a necessary condition of the document's being an identification document. The "when" conduct merely turns the card into one that identifies a particular person.

Any lingering doubt as to the meaning of the statute is dispelled by the legislative history of § 1028. The intent of the Congress was to define "identification document" broadly and to encompass both complete and incomplete documents within its definition:

> The definition [of "identification document"] is intended to include blank identification documents which have not been completed with information relating to a particular individual.

H.R.Rep. No. 97–802, at 9 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3519, 3527.

Moreover, the courts that have considered the question uniformly hold that the definition of "identification document" includes uncompleted documents. *See United States v. Viera,* 149 F.3d 7, 9 (1st Cir.1998) (per curiam); *United States v. Salazar,* 70 F.3d 351, 352 (5th Cir.1995); *cf. United States v. Martinez–Cano,* 6 F.3d 1400, 1403 (9th Cir. 1993) (increasing sentence for manufacturing false documents, some of which were complete and others of which were blank); *United States v. Pahlavani,* 802 F.2d 1505, 1506 (4th Cir.1986) (quoting legislative history, concluding that Congress intended Form I–94 Department of Justice Arrival–Departure Records to come within the statutory definition of "identification document"). We therefore conclude, as have the other circuits, that Congress intended blank, incomplete identification documents to come within the statutory definition of "identification document" for purposes of § 1028(d)(1). We therefore agree with the district court's determination that all of Mr. Castellanos' documents, whether completed or blank, were available for trafficking and could count for sentencing enhancement purposes under § 2L2.1.

**B.**

■ In the alternative, Mr. Castellanos asserts that, if the blank documents he was carrying fall within the definitional scope of § 1028(d), he actually possessed only 26 documents, that is, 24 sheets of blank counterfeit resident alien cards (each sheet containing 8 impressions of the card) and 2 sheets of counterfeit Social Security cards (each sheet containing 12 impressions of a Social Security card). Mr. Castellanos relies on Application Note 2 of § 2L2.1, which states: "Where it is established that multiple documents are part of a set of documents intended for use by a single person, treat the set as one document." U.S.S.G. § 2L2.1, comment. (n.2). He asserts that the multiple copies of each card are part of a set and thus should be counted as one document.[4]

It is important to note that, under the commentary, the documents are a "set" when

---

4. The government asserts that this alternate position of Mr. Castellanos' was not raised in the district court because he did not rely on Application Note 2 in that court. However, Mr. Castellanos raised this argument generally in "Defendant's Position as to Sentencing Guidelines," *see*

R.56, and at the sentencing hearing, *see* R.64 at 17–18. We consider the contention adequately raised. *See United States v. Torres,* 81 F.3d 900, 903 (9th Cir.1996) (finding distinction between "documents" and "sets of documents" adequately raised even though not specifically argued).

"it is established" that they are "intended for use by a single person." *See United States v. Torres*, 81 F.3d 900, 904 (9th Cir.1996) (noting that, despite linguistic changes in § 2L2.1, the guidelines "still provide that multiple documents, part of a set intended for use by a single person, should be treated as one document"); *cf. Salazar*, 70 F.3d at 352 n. 2 (noting in dictum defendant's concession that a "set" requires a completed document or group of completed documents for an individual); *Martinez–Cano*, 6 F.3d at 1402 (discussing earlier version of Application Note 2, noting difference between single documents and sets of documents). One person could not use, for identification purposes, 12 Social Security cards or 8 resident alien cards found on one sheet. Although Mr. Castellanos does not make the argument, one might contend that a single individual might buy and use, for identification purposes, both a Social Security card and an alien registration card. Thus, conceivably, the district court might have counted 24 sets of Social Security and resident alien cards and an additional separate 172 resident alien cards. That number still is greater than 100 and therefore would result in the same increase in offense level. Moreover, there is no evidence that the documents in Mr. Castellanos' duffle bag were, as Application Note 2 requires, groups of documents intended for one individual. We must conclude, on this record, that the district court correctly calculated the number of identification documents for which Mr. Castellanos was to be held accountable for sentencing purposes.

### Conclusion

For the reasons presented above, we hold that the district court properly determined that the term "identification document" included blank documents and correctly calculated that the offense to which Mr. Castellanos pleaded guilty, conspiracy to traffic in illegal documents, more likely than not involved 100 or more identification documents under U.S.S.G. § 2L2.1(b). The judgment of the district court is affirmed.

AFFIRMED.