[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 02-16294
Non-Argument Calendar

D. C. Docket No. 02-14011-CR-DLG

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 3, 2003
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SATNAM SINGH,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(July 3, 2003)**

Before TJOFLAT, BIRCH and COX, Circuit Judges.

PER CURIAM:

Satnam Singh appeals his sentences, which were imposed by the district court after he pleaded guilty to three charges relating to the possession of false and fraudulent documents. In December 2001, police officers observed Singh entering a vehicle that had been reported stolen. The vehicle also displayed a license plate number that was not registered to Singh. When the police stopped him, Singh refused to sign a citation for the improper license plate and he was arrested. During the vehicle impound inventory that followed the arrest, the police discovered eight United States passports, twenty-three birth certificates, sixty-six domestic driver's licenses, one international driver's license, two military identification cards, and two United States government identification cards inside the car. Of these documents, only the international driver's license, eighteen of the domestic driver's licenses, and one of the military identification cards contained Singh's likeness. Additionally, the police found numerous documents that supported these false identifications (including credit cards, video store membership cards, frequent flyer club cards, and telephone calling cards), as well as numerous photocopies of passport applications and approximately 100 photocopies of Virginia driver's licenses. Singh subsequently pleaded guilty to three counts: (1) possessing with the intent to unlawfully use or transfer five or more false identification documents, in violation of 18 U.S.C. § 1028(a)(3); (2) possessing false identification documents with the intent to defraud

the United States, in violation of 18 U.S.C. § 1028(a)(4); and (3) possessing a fraudulent passport, in violation of 18 U.S.C. § 1546(a).

The district court sentenced Singh under USSG § 2L2.1. United States Sentencing Commission, *Guidelines Manual*, § 2L2.1 (Nov. 2002). Singh's base offense level of eleven, USSG § 2L2.1(a), was increased by nine levels pursuant to USSG § 2L2.1(b)(2) because his offense involved 100 or more documents or passports, and it was increased by two more levels under USSG § 2L2.1(b)(4)(A) because he had a prior conviction for a felony immigration and naturalization offense. The court also assessed a two-level enhancement for obstruction of justice under USSG § 3C1.1 and imposed a $5,000 fine. The court sentenced Singh to serve concurrent sentences of 36, 36, and 60 months in prison on the three counts.

On appeal, Singh raises four issues related to the district court's application of the Sentencing Guidelines, but only one issue warrants discussion.[1] Singh contends

---

[1] Singh argues that the district court erred when it applied USSG § 2L2.1 ("Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status, or a United States Passport") instead of USSG § 2L2.2 ("Fraudulently Acquiring Documents Relating to Naturalization, Citizenship, or Legal Resident Status for Own Use"). The district court applied § 2L2.1 based on its factual finding that Singh was trafficking in identification documents. We review the district court's factual findings for clear error, *United States v. Cover*, 199 F.3d 1270, 1274 (11th Cir. 2000), and we conclude that the district court did not clearly err in finding that Singh was engaged in trafficking.

Second, Singh argues that the court erred when it assessed an obstruction-of-justice enhancement. We review a district court's finding that a defendant obstructed justice for clear error, *United States v. Poirier*, 321 F.3d 1024, 1035 (11th Cir. 2003), and we conclude that the district court did not clearly err.

Third, Singh contends that the court erred when it imposed a $5,000 fine because the

3

that the driver's licenses, military identification cards, and United States government identification cards are not "documents" within the meaning of that term in § 2L2.1(b)(2); thus, they should not have been counted when the court increased his offense level. If Singh is correct, his offense involved 31 documents (eight passports and 23 birth certificates), not 100 or more documents, and only a six-level increase was warranted under § 2L2.1(b)(2).[2]

We review the district court's factual findings for clear error and we review its application of the law to those facts de novo. *United States v. Cover*, 199 F.3d 1270, 1274 (11th Cir. 2000). The question presented in this appeal is whether, given the circumstances of this case, the district court erred when it counted the domestic driver's licenses, military identification cards and United States government identification cards as "documents" pursuant to USSG § 2L2.1(b)(2). We conclude that the district court did not err.[3]

---

Government failed to prove that Singh had the ability to pay the fine. But the burden was on Singh to prove his inability to pay, *United States v. Hernandez*, 160 F.3d 661, 665 (11th Cir. 1998), and we review the district court's conclusion regarding the defendant's ability to pay for clear error, *United States v. Garrison*, 133 F.3d 831, 850 n.32 (11th Cir. 1998). The district court did not clearly err in this regard.

[2] Pursuant to USSG § 2L2.1(b)(2), if the offense involved between six and 24 documents or passports, the offense level is increased by three; if the offense involved between 25 and 99 documents or passports, the offense level is increased by six; and if the offense involved 100 or more documents or passports, the offense level is increased by nine.

[3] Singh also contends that the international driver's license should not be counted for the purposes of § 2L2.1(b)(2). Because we conclude that the domestic driver's licenses, the military

Section 2L2.1(b)(2) states "[i]f the offense involved six or more documents or passports, increase as follows . . . ." and then presents a two-column table that equates the "Number of Documents/Passports" to the appropriate "Increase in Level." USSG § 2L2.1(b)(2). But § 2L2.1 does not define "documents." Additionally, "documents" is not defined in the application notes that accompany § 2L2.1. Because "documents" is not explicitly defined in the Sentencing Guidelines, we must interpret the term and, with respect to that undertaking, Singh and the Government offer competing definitions of "documents."

Singh contends that "documents" in § 2L2.1 refers to only those documents that relate to naturalization, citizenship, or legal resident status. To support this contention, Singh points to a portion of the title of § 2L2.1 – "Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status." *See* USSG § 2L2.1. Singh argues that the title of this section necessarily limits the type of documents that can be counted towards the offense level increase in § 2L2.1(b)(2). Furthermore, Singh argues that the documents at issue in this case – domestic driver's licenses, military identification cards, and United States government identification

---

identification cards, and the United States government identification cards were properly counted – and, as a consequence, Singh's offense involved at least 101 documents or passports – we need not decide whether the international driver's license also should have been counted.

5

cards – are not documents "relating to naturalization, citizenship, or legal resident status" and therefore should not have been counted.

In response, the Government suggests that the definition of "documents" is broader than just those documents that relate to naturalization, citizenship, or legal resident status. The Government's argument relies on the language of § 2L2.1(b)(2), which instructs that "[i]f *the offense involved* six or more documents or passports," the defendant's offense level should be increased according to the guideline table. USSG § 2L2.1(b)(2) (emphasis added). The language of this section, the Government contends, requires the sentencing court to consider the offense of conviction, because the documents that should be counted are those that were "involved" in the offense. In this case, Singh pleaded guilty to violating 18 U.S.C. § 1028(a)(3) and (a)(4),[4] which criminalize a variety of fraudulent activities in connection with "identification documents." 18 U.S.C. § 1028(a)(3), (a)(4). Under § 1028, an "identification document" is

> a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a

---

[4] Singh also pleaded guilty to violating 18 U.S.C. § 1546(1), which criminalizes fraud and misuse of a fraudulent passport. Singh concedes, however, that the eight fraudulent passports found in his possession must be counted under § 2L2.1(b)(2).

particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

*Id.* § 1028(d)(2). The Government contends that the domestic driver's licenses, military identification cards, and United States government identification cards are "identification documents" under § 1028, and therefore Singh's offense "involved" all of these documents and it was proper to count them for the purposes of § 2L2.1(b)(2).

We agree with the Government. The language of § 2L2.1(b)(2) is clear: the sentencing court is directed to count any documents or passports that are "involved" in the offense. Singh violated 18 U.S.C. § 1028(a), and he does not argue that domestic driver's licenses, military identification cards, or United States government identification cards lie outside § 1028's broad definition of "identification documents." Singh's offense "involved" these documents, so the district court acted properly when it counted them for the purposes of § 2L2.1(b)(2). Because the language of § 2L2.1(b)(2) clearly resolves this issue, we reject Singh's reliance upon the title of § 2L2.1 to support his restrictive definition of "documents." As we have noted before, "The Court will not look to the title of a guideline to explain what is quite clear in its text." *United States v. Chastain*, 198 F.3d 1338, 1353 (11th Cir. 1999).

7

It appears that no other court of appeals has been called upon to squarely address the question presented in this appeal, but the Seventh Circuit's reasoning in *United States v. Castellanos*, 165 F.3d 1129 (7th Cir. 1999), strongly supports our conclusion. Castellanos produced counterfeit identification documents by typing biographical information onto blank counterfeit resident alien cards and Social Security cards. When he was apprehended, he was carrying 192 blank resident alien cards and 24 blank Social Security cards. He was convicted under 18 U.S.C. § 1028(a)(5), but he contended on appeal that the district court erred when it counted the blank documents under § 2L2.1(b)(2) to increase his offense level. The Seventh Circuit disagreed. To determine whether the blank documents should have been counted, the Seventh Circuit referred to the definition of "identification documents" in § 1028. Because that definition includes documents that, when completed with information concerning a particular individual, are commonly accepted for identification – such as blank resident alien cards and Social Security cards – the Seventh Circuit concluded that the blank cards found in Castellanos's possession were "identification documents" under § 1028. The Seventh Circuit went on to conclude that these documents were properly counted under § 2L2.1(b)(2):

> We therefore conclude . . . that Congress intended blank, incomplete identification documents to come within the statutory definition of "identification document" for purposes of § 1028(d)(1). We therefore

agree with the district court's determination that all of Mr. Castellanos' documents, whether completed or blank, . . . could count for sentencing enhancement purposes under § 2L2.1.

*Castellanos*, 165 F.3d at 1132. By focusing its analysis on the definition of an "identification document" in § 1028, and not on whether the blank resident alien cards and Social Security cards "related to naturalization, citizenship, or legal resident status," the Seventh Circuit implicitly recognized in *Castellanos* that a court must consider what documents were involved in the offense of conviction to determine what documents should be counted under § 2L2.1(b)(2).

In conclusion, we hold that the term "documents" in § 2L2.1(b)(2) is not limited by the "relating to naturalization, citizenship, or legal resident status" phrase contained in the title of § 2L2.1.[5] Instead, the language of § 2L2.1(b)(2) instructs a sentencing court to count any documents that were "involved" in the offense, and this inquiry naturally requires the sentencing court to consider the offense of conviction. Singh was convicted for violating 18 U.S.C. § 1028(a), which relates to "identification documents," and he does not dispute that the domestic driver's licenses, military identification cards, or United States government identification

---

[5] We should not be understood to suggest that driver's licenses, military identification cards or United States government identification cards are not "related to naturalization, citizenship, or legal resident status." We merely conclude that such an inquiry is not relevant when the court must determine which documents should be counted under § 2L2.1(b)(2).

cards found in the car are "identification documents" under § 1028.  Thus, it was proper for the district court to count these documents under § 2L2.1(b)(2), and the court's conclusion that Singh's offense involved 100 or more documents or passports is correct.  Accordingly, Singh's sentences are

AFFIRMED.